PRIMUS EDWARDS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[TRIPPE, Judge, was providentially prevented from presiding in this case.]

1. When, on a trial of an indictment for murder, it appeared that hot words had passed between the parties, and the deceased had drawn his knife from his pocket, but had not opened it, or made any offer to use it, and he was stabbed and killed by the prisoner, as he, the deceased was being taken out of the room by persons present, and the judge, after fully charging the jury as to heat of passion, malice, express and implied, and as to murder and manslaughter, as laid down in the Code, further charged that to reduce a crime from murder to manslaughter, something more was necessary than provocation by words, threats, menaces, or contemptuous gestures, and that such words, accompanied with drawing a knife, with no attempt to use it, was not sufficient: *Held,* that under the facts of this case such charge was not error.

2. Where, on a trial for murder, the judge charged the jury as laid down in section 4325 of the Code, "in all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an at-

tempt by the person killed to commit a serious personal injury upon the person killing, or other equivalent circumstances to justify the excitement of passion and exclude all idea of deliberation or malice, express or implied," and then added that the "equivalent circumstances," whatever they are, must correspond somewhat in their character with an actual assault, or an attempt to commit a serious personal injury:

*Held*, that whilst this court is not prepared to adopt this restriction of the "equivalent circumstances" mentioned in the Code, yet, as there was nothing in the evidence in this case but words, threats and menaces, which are, by the same section of the Code, declared not to be within the meaning of equivalent circumstances, we do not feel authorized to reverse the judgment refusing a new trial.

3. The evidence in this case justifies the verdict.

4. It is not a ground of new trial that the names of one or more of the jurors who tried the case are not on the jury list. (R.)

5. The opinion of this court is *Brown vs. The State,* as to the meaning of the statute making the jury judges of the law and the facts, and in all criminal cases to find a general verdict of guilty or not guilty, is affirmed.

Criminal law. Manslaughter. New trial. Jury. Before Judge CLARK. Sumter Superior Court, April Term, 1874

Primus Edwards was placed on trial for the offense of murder alleged to have been committed upon the person of Berry Adams, on March 31st, 1874. The defendant pleaded not guilty.

The evidence made this case : The defendant and the deceased were laborers upon the same plantation. The defendant lived at the house of one Bunk Lamar. The deceased resided in his own house with his wife, about twenty yards distant. The defendant had been somewhat attentive to the wife of the deceased, which had produced a feeling of jealousy upon the part of the latter. On the day of the difficulty the deceased was at the house of Bunk Lamar when the defendant came home to dinner. They became involved in an altercation in reference to the relations existing between the wife of deceased and the defendant. Some mutual abuse passed. The defendant had his knife open in his hand. The deceased pulled his knife out, but before he opened it, Bunk

Lamar interfered, and he returned it to his pocket.     As Bunk Lamar was carrying him out of the house, the defendant stabbed the deceased in the back, from which wound he died in about fifteen minutes.

The jury found the defendant guilty.  A motion was made for a new trial upon the following, amongst other grounds:

1st. Because the court erred in charging the jury as follows:  "If the provocation was words, such as the damned liar, or damned rascal, or damned son-of-a-bitch, accompanied with the drawing of a knife, but with  no attempt to use it, such provocation is not sufficient to justify the excitement of passion, and  to exclude all idea of deliberation or malice either express or implied.   If these constitute the sole provocation, malice will be implied."

2d.  Because the court erred in charging the jury as follows:  "The sudden heat of passion, which is supposed to enter into every case of voluntary manslaughter, must originate and spring from some actual assault upon the person killing, or some attempt by the person killed, to commit a serious personal injury on the person killing, or other equivalent circumstances.   The equivalent circumstances, whatever they are, must correspond somewhat in their character with an actual assault, or an attempt to commit a serious personal injury."

3d.  Because the court refused to charge as follows :  "The jury are the judges of the law and the facts, and while they are to look to the court for the law, at the same time, if they conscientiously  differ with the judge as to what is the law, they may find according to their own judgment."

4th.  Because the verdict was contrary to the law and the evidence.

The entire charge of the court is embraced in the bill of exceptions.   It covered the offenses of murder and manslaughter and defined malice, express and implied.

The motion was overruled and the defendant excepted.

Edwards *vs.* The State of Georgia.

FORT & McCLESKEY; JACK BROWN, by J. A. ANSLEY, for plaintiff in error.

C. F. CRISP, solicitor general, by brief, for the state.

McCAY, Judge.

1. We do not feel authorized to disturb this verdict. There is much in the evidence to show express malice. The Code, section 4325, in express words, declares that "provocation by words, threats, menaces, or contemptuous gestures, shall, in no case, be sufficient to free the person killing from the crime of murder," and there is absolutely nothing in this case more than these things. That the deceased pulled out his knife, but made no effort to use it, and did not even open it, can, in no sense, be more than a menace, if it was that. From the evidence it is fairly inferable that the prisoner pulled out his knife first, and it is clear that when the killing took place the deceased had put up his knife and was leaving the room, so that the prisoner had to *follow* him and to reach round the witness to get at him. Under the evidence, even with the most liberal construction of the Code, this is murder, since there is nothing in the circumstances to justify the heat of passion that is not expressly declared by the Code to be insufficient to reduce the killing to voluntary manslaughter.

2. We are not prepared to say that we entirely approve of the definition given by the court of "equivalent circumstances," although we see a good deal of force in the argument to show that he has given the true meaning. It is a general rule of construction that when special things are mentioned, and then a general clause, the general clause is to be taken in the sense put by the judge.

3. But however this may be, there is nothing in the evidence in this case to suggest any equivalent circumstances. It is perfectly plain that "equivalent circumstances" does not include words, threats, menaces or contemptuous gestures, since the Code, in terms, so says. And there is nothing else

here, even if the deceased was in the wrong in the use of even threats, etc., which is not at all clear. The prisoner's declaration that he would do with deceased's wife as he pleased, would justify a very high degree of passion on deceased's part, and fairly excuse a very strong reply, and perhaps much more. So that even if the idea of Judge CLARK as to the meaning of equivalent circumstances, be wrong, this does not justify a new trial. This court does not sit here to decide abstract questions or to grant new trials because the judge has said or done something that is not right in the abstract. The error, to be the ground of a new trial, must be some infringement of the rights of the prisoner, and not a mere abstract error.

4. We decided in 40 *Georgia*, 253, that it is not a good ground for a new trial, that one or more of the jurors who tried the case are not on the jury list. It is *propter defectum.* The prisoner has not only the fullest opportunity to object for cause when the juror is put upon him, but has a large number of peremptory challenges, and it is not only a fair presumption, but is in most cases true, that the jury is made up of men which the prisoner is satisfied with, and it is not a hardship to deny him, after verdict, the right to go to the jury list and find objections to the jurors who tried him. That list was just as accessible before as after the trial, and it would open the door to much abuse to allow of the practice insisted on.

5. Upon the other question made in this record, we have passed several times. The court below was asked to charge the jury that they were to take the law from the court, but if they conscientiously differed from the court as to what the law was, they had a right to do so. This extraordinary request is based on that section of the Code which declares, "that on every trial of a crime or offense contained in this Code, or for any crime or offense, the jury shall be judges of the law and the fact, and shall in every case give a general verdict of guilty or not guilty, and on the acquittal of the defendant no new trial shall on any account be granted by the court." Code,

section 4646. This court has held in *Brown vs. The State*, 40 *Georgia*, that this right of the jury to judge of the law and the facts, does not authorize them to get the law except through the court. There must be some channel through which the jury are to get the law. It is their duty, their necessary duty, to find out what the law is, and to come to a conclusion upon the matter, just as it is their duty to find out what the facts are. They have to judge of both to come to a conclusion as to both. We have held, and still hold, that the judge is the channel through which they are to get the law, just as the evidence "introduced" is the channel through which they are to get the facts. They have no right to go out of the evidence for the facts, nor to go away from the judge for the law. From these two sources they are to get the material for their verdict, and they are thus judges of the law and facts, and must find a general verdict, including law and fact.

Judgment affirmed.