MACK *vs.* THE STATE OF GEORGIA.

The prosecutor having been stabbed in the back from behind while holding, with his left hand, the prisoner's father-in-law by the wrist, and in his right hand an open knife raised over him, and the court, on the prisoner's trial for an assault with intent to murder, alleged to have been committed by the act of stabbing, having charged the jury that, "in all cases of voluntary manslaughter there must be some actual assault upon the person killing by the person killed:" *Held*, that so restricted a statement of the law of manslaughter was not appropriate to the facts of the case. The court should have completed the sentence in which these words are found (Code, §4325) by adding, "or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and exclude all idea of deliberation or malice, either express or implied."

Criminal law. Manslaughter. Assault with intent to murder. Before Judge, SPEER. Bibb Superior Court. October Adjourned Term, 1878.

Reported in the opinion.

WASHINGTON DESSAU, for plaintiff in error.

C. L. Bartlett, solicitor general; A. Proudfit, for the state.

Bleckley, Justice.

Mack was indicted for the offense of assault with intent to murder, by stabbing and cutting in the back one Stephen McBride, with a knife, the same being a weapon likely to produce death. The evidence showed that a quarrel took place in McBride's kitchen between McBride and one John Adkins, the prisoner's father-in-law, in the night, about supper-time. The parties were colored people, and there were some twenty negroes in the kitchen on the occasion, among them the prisoner, and McBride's mother. None except McBride and Adkin's took part in the quarrel. Each of these drew his knife (as to which was the first to draw, the evidence was apparently conflicting). By degrees they moved towards the door, with knives drawn, Adkins backing and McBride following. About the time Adkins reached the door McBride was stabbed in the back from behind. The prisoner was seen by some of the witnesses to strike the blow. He denied that he did it, and, so far as appears, never admitted the act, nor rendered any excuse for it.

The position of McBride and Adkins at the time the stabbing took place, and what was transpiring at the moment, may be gathered from the following extracts from the brief of testimony. McBride testified: "When I was cut John Adkins was about at the door. I was following him. He had his knife open. I had him by the wrist of the hand that he had his knife in. . . . I was right at the door at the time. . . I had hold of his wrist with my left hand, and had a knife in my right hand." Abram Fuse, another witness for the state, testified: "McBride caught Adkins' hand with the knife in it, and held a knife over Adkins; then McBride's mother took the knife from Adkins, and called to me to take the knife from McBride.

I was afraid to get hold of him. I put my hand on his shoulder, and grabbed him by the hand. At this time, prisoner ran up and stuck a knife in him. . . . I had hold of McBride, who had hold of Adkins, and prisoner was right behind me. I did not catch McBride at first, as he had his knife drawn over Adkins. He was telling him to 'say it again.' He had his knife raised—blade open." It was in evidence that Adkins and the prisoner lived together, about one mile from the scene of the difficulty.

In charging the jury, the court treated the indictment as embracing but one offense, that of assault with intent to murder, making no allusion in the charge to the minor offenses of stabbing, assault, or assault and battery. The law of murder was expounded, and the jury were told that to constitute the offense on trial, all the elements of murder are requisite, save and except the death of the party assaulted. In treating of these elements, the court said: " To reduce the offense from the crime of murder to manslaughter, it must appear that there was some actual assault upon the person slaying by the person slain." This was the only allusion to manslaughter which the charge contained.

The prisoner was convicted, and his counsel moved for a new trial on the usual grounds as to law and evidence, and because the court erred " in not submitting to the jury for their consideration the law of manslaughter as set forth in the Code."

The evidence showed no trace of any assault upon the prisoner. He was a bystander, and had taken no part in the altercation. So far as appears, there had at no time been any misunderstanding between him and the prosecutor, nor any bad blood or cause of quarrel between them. So far, therefore, as the court gave the law of manslaughter in charge to the jury, it had no direct application to the facts in evidence. This being true, the following extract from the charge will show that there was no possible chance for the jury to have returned any verdict but one

of guilty, if they believed that the prisoner did the stabbing with intent to kill: "If you believe, under the evidence, that the defendant, in this county, at or about the time charged, made an assault upon the person of Stephen McBride with a weapon likely to produce death, with an intent to kill him, and that the same was not in his own defense, and without any assault being made upon him, and the evidence satisfies you of these facts beyond a reasonable doubt, then you should find him guilty of the offense as charged. To reduce the offense from the crime of murder to manslaughter, it must appear that there was some actual assault upon the person slaying by the person slain. If the defendant, not in his own defense, and without being assaulted by the person wounded, used a weapon that is likely to produce death, with an intent to take human life, inflicted a wound that tends to endanger the life of the person wounded, these facts would constitute the offense of assault with intent to murder." The jury were too much restricted by this charge. There can be voluntary manslaughter where there is no assault upon the person killing, and no attempt to commit a serious personal injury upon him; for the Code expressly recognizes that there may be "other equivalent circumstances to justify the excitement of passion and exclude all idea of deliberation or malice, either express or implied." Code, §4325; 51 *Ga.*, 402. What circumstances will present this equivalence, and justify the excitement of passion, and exclude all idea of deliberation or malice, the law does not undertake to say; it furnishes a standard, and leaves the jury in each case to make the comparison, and determine whether the special facts of the case before them come up to that standard or not. The prisoner was a spectator of a threatened conflict with knives, one of the parties in danger being his father-in-law, with whom he was domiciliated. The jury, were they to pass upon the question, might believe that he stabbed the antagonist of his father-in-law without deliberation or malice, but in a sudden heat of passion, and that

the circumstances justified the excitement of his passion, and were in their nature equal to an assault upon himself, or an attempt to commit upon him a serious personal injury. In view of his denial of the act, and of his offering no excuse for it at the time, it would, perhaps, be easy for the jury to reach a more severe conclusion; but the trouble is, that the instructions of the court cut short their deliberations, and did not direct their attention to the only question which the evidence left uncertain. We think there should be a new trial.

Judgment reversed.