## SUMNER *v.* THE STATE.

1. In a trial under an indictment for murder, it is the duty of the presiding judge to give in charge to the jury the law relating to voluntary manslaughter when there is any evidence which would support a verdict for that offense. In the present case, while much of the evidence tended to show that the homicide might have been legally graded as murder, yet there was evidence which, if credible, might reduce the offense from murder to voluntary manslaughter. The court, therefore, properly charged the law relating to voluntary manslaughter, and the jury having returned a verdict finding the defendant guilty of that offense, it can not be said that such verdict was contrary to the law or the evidence in the case.

2. A charge in the following words, "On the other hand, if you are satisfied, after a careful consideration of all the evidence in the case, testimony and other sources of information," etc. (as to the guilt of the defendant), might, if standing alone, authorize the inference that the jury in making their verdict could regard other sources of information than the evidence and the statement of the accused ; but when it appears by reference to the entire charge that the jury were repeatedly instructed in arriving at their verdict to only regard the evidence in the case and the statement of the prisoner, it is not cause for a new trial that such inference might be drawn from this detached portion of the charge. Taking the whole charge together, the words, " other sources of information," could not be fairly understood as applying to anything except the prisoner's statement.

3. When a new trial of a criminal case is asked on the ground that one of the jurors who tried the case was not a fair and impartial juror, and in support of such ground an affidavit of only one person is presented tending to show that prior to the trial the juror made statements showing that he was prejudiced against the defendant, a new trial, without more, will not be ordered. The juror, having qualified on his voir dire is to be presumed to have rightly done so until the contrary is shown by more than one witness.

4. The grounds of the motion for new trial not dealt with above present no sufficient cause for a reversal of the judgment.

Argued October 5, — Decided October 28, 1899.

Indictment for murder. Before Judge Spence. Worth superior court. April term, 1899.

*J. W. Walters* and *Frank Park*, for plaintiff in error.

*W. E. Wooten*, solicitor-general, by *Harrison & Bryan*, and *J. J. Forehand*, contra.

LITTLE, J. L. M. Sumner was indicted for the murder of James Powell, and was found guilty of the offense of voluntary manslaughter. His motion for a new trial was overruled by the presiding judge, and he excepted to that decision.

1. One ground of the motion alleges error because the court gave in charge to the jury the law of voluntary manslaughter; and inasmuch as the verdict was for voluntary manslaughter, this ground will be considered in connection with the first two grounds, that is, that the verdict was contrary to law and the evidence. If a verdict for voluntary manslaughter could not have been sustained under any of the evidence in the case, then the law relating to that offense should not have been given in charge to the jury, nor can a verdict for that offense be sustained. On the contrary, if there was evidence from which the jury trying the case might have determined that the homicide was committed as the result of passion, and there were facts which in law justified the existence of that passion, then the law relating to the offense of voluntary manslaughter should have been given in charge, and a verdict for that offense must stand. The determination of the question involved, therefore, necessarily requires, to some extent at least, an examination of the law of voluntary manslaughter, as well as reference to some parts of the evidence. Under our law it is requisite, in order to reduce a homicide from murder to voluntary manslaughter, that it shall be shown not only that the homicide was without malice and was the result of a sudden heat of passion, but also that the deceased must have done something to the defendant to justify the passion which prompted the act. Penal Code, §§ 64, 65. The latter section prescribes that, in order to justify the excitement of passion, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances, that is, circumstances equivalent to an assault, or equivalent to an attempt to commit a serious personal injury. None of these things justify the killing, but some of them must exist to justify the passion which causes the killing, in order to make the offense voluntary manslaughter. It has been held in the case of *Edwards* v. *State*, 53 *Ga.* 428, that the equivalent circumstances referred to in the statute do not include words, threats, menaces, or contemptuous gestures, and in the case of *Mack* v. *State*, 63 *Ga.* 696, it was said that while the law furnishes this standard, it

leaves the jury to make the comparison as to what are circum-stances equivalent to an assault and equivalent to an attempt to commit a serious personal injury.   Keeping these principles of law in view, we now seek from the brief of evidence to ascer-tain whether there were present at the commission of the homi-cide any circumstances which the jury could believe excluded the idea of deliberation or malice in the commission of the homicide and which justified the excitement of passion on the part of the accused, necessary to reduce the grade of the homi-cide from murder.   It may be said in a general way, without discussing the evidence, that it was shown clearly that at the time and immediately preceding the act of homicide, bad blood toward each other was manifested by both the deceased and the accused; that they cursed each other in a shocking manner and quarrelled violently; and, while it appears that the accused placed himself in a defensive position and it was the evident intention of the deceased to attack the accused, that neverthe-less the passions of both were greatly aroused.     ·

Henderson Powell, a witness for the defendant, testified, among other things, that the deceased cursed the accused, and the latter came walking towards the deceased and said, "Pow-ell, you know G— d— well that I am not scared of you," and then the deceased began trying to get to him.   I had hold of Powell at the time, and turned him loose, and when Powell got within two steps of the accused the latter raised his hand and went to shooting.   Did not see Powell have any knife, but saw a knife on the floor open.   The accused told the deceased several times to let him alone, that he did not want to hurt him and he did not want the deceased to hurt him.   Could not tell whether Powell was standing still when he was shot or not. Edwards testified, that he went into the store and saw that something was the matter; that he spoke to the accused and asked him what did it all mean; that he replied to him, "Don't talk to me, talk to the other man."   He then went to Powell and told him to go out of the store and have no row. Powell had his knife out.   Powell did go out of the store, and then returned.   The accused was then behind the counter, and Powell was on the outside of it.   Witness held to Powell, and

he swung his knife around and cut his coat; he then turned Powell loose, who began cursing the accused and got in about 3 or 4 feet of the counter with a knife in his hand, and the accused then shot him. Sheppard said that Powell was doing the cursing; that several tried to get him out; that the accused was behind the counter, and the deceased with a knife in his hand made a rush up to the counter behind which the accused was, and accused shot him. He got pretty close to accused, but the counter was between them. Among other things, Dunn testified that Powell cursed Sumner and stepped out in the little gate and walked a step or two towards the accused and cursed him again. The accused said nothing. The deceased made a start and accused commenced shooting him. Persons present tried to get Powell to stop; they turned him loose, and he went right towards accused and was in 5 or 6 or 7 feet of the counter. Witness did not see him have a weapon. One witness testified that there were four shots fired very rapidly; that Powell was struck three times, once on the back of the head, another wound was under the arm, etc.

We do not refer to any part of the evidence, which is very voluminous, except such as would seem to authorize a charge and verdict of voluntary manslaughter; but it appears that the parties were involved in a difficulty, that the accused placed himself behind the counter, that the deceased advanced on him, some of the witnesses say with a knife, some did not see any. It is apparent from much of the evidence that at the time of the shooting the accused was not in imminent danger; but from it the jury, we think, might have considered that the deceased made an assault on the accused, and, if not an assault, that the circumstances attending his advance to the accused were the equivalent of an assault sufficient to arouse passion which prompted the shooting. If so, a verdict of manslaughter would be supported, and it was the duty of the presiding judge to charge the law of that grade of homicide. As to what are equivalent circumstances, see *Murray* v. *State*, 85 *Ga.* 381. Where the attempt to commit an injury is between provocation by words and an attempt to commit a felony, the verdict for manslaughter is proper. *Buchanan* v. *State*, 24 *Ga.* 282. A

careful review of the evidence induces us to think that the verdict rendered was the lowest that could properly have been rendered.

2. Complaint is made that the court erred in giving the following charge to the jury: "On the other hand, if you are satisfied, after a careful consideration of all the evidence in the case, testimony and other sources of information; satisfied beyond a reasonable doubt that there was no necessity for the killing at the time it occurred, that it was not necessary to protect his person from a felony which was about to be committed upon it, the circumstances were not sufficient to excite the fears of a reasonable man that his own life was in imminent peril, and that it was not necessary for him to take human life in order to save his own life; satisfied beyond reasonable doubt that the circumstances were not sufficient to excite the fears of a reasonably brave man of a felony being committed upon his person, then it would be your duty to convict him." The specific error alleged in this charge is, that it did not confine the jury to the issues in the case as disclosed by the evidence, but instructed the jury that they could consider other sources of information, without explaining what they were, and that the jury were thus left free to consider any kind of information derived from any source. As set out in the motion, this extract from the charge, if taken alone, might be susceptible of the construction given to it by counsel for the plaintiff in error, and, if it could thus be construed, it would be error; for, as a matter of course, the jury in the trial of a criminal case must, in determining the facts, regard only the evidence and the statement of the prisoner. In endeavoring to ascertain what was the meaning of the judge when he referred to "other sources of information," and how it might have been taken or construed by the jury, we have carefully examined the entire charge, and we find that the judge opens his charge with this statement: "It is your duty, gentlemen, to try this case by the evidence. Take the law from the court, and apply the law to the facts as you find them. You will not be controlled or influenced by anything outside the evidence in the case. Consider it in connection with the statement of the defendant, which he has a

right to make under the law." And again, further on in his charge he says: "Your own responsibility, gentlemen, is to try this case by the testimony, by the evidence in the case, consider it along with the statement of the defendant, and to find a truthful verdict." Again he charges: "Take the case, gentlemen, and consider it carefully as its importance demands at your hands, consider all the evidence in the case, and determine what is the truth of the transaction — what are the facts." The direction to determine the truth of the case under the evidence and statement of the accused is repeated in a number of other places in the charge. It is apparent that the portion of the charge excepted to, standing alone, would be error, but that when taken in connection with the other parts of the charge the jury could not understand that they were to look to any other source but the evidence and the statement of the prisoner, in order to determine the guilt or innocence of the defendant. Indeed, from the language used in different parts of his charge where the judge referred to the evidence and the statement of the prisoner in the same connection, the words "other sources of information" were evidently intended by him, and so understood by the jury, to refer to the statement of the defendant. So construing the charge, it affords no ground for a reversal of the judgment.

3. Another ground of the motion is, that Lewis, one of the members of the traverse jury who tried the case, was not, at the time that he qualified, a fair and impartial juror, because he had formed and expressed an opinion as to the guilt of the defendant, and was prejudiced against him. In support of this ground of the motion an affidavit of G. B. Edwards was filed, who deposed that, during the week preceding the trial of the accused, he had a conversation with W. H. Lewis who was afterwards on the jury which tried the case against Sumner, and that Lewis remarked that Joe M. Sumner ought not to help his son Leonard at all, that he ought to let him go, and that Oscar Sumner, Leonard's brother, ought to have been fined a thousand dollars for selling cider to Sumner; that if he, Lewis, were on the jury that would try Sumner, he could not help him a bit; that he thought he ought to be allowed to go on

without help; that the people of Worth county ought to hang a few and stop all this killing business. This was the only affidavit submitted to show the disqualification of the juror. In the case of *Fogarty* v. *State*, 80 *Ga.* 464, this court, citing the case of *Hudgins* v. *State*, 61 *Ga.* 182, approvingly quoted from the opinion in the last-named case the rule there laid down, in the following language: "After verdict, to disqualify a juror who tried the case and swore that he had not formed and expressed an opinion, and had no bias or prejudice, and was perfectly impartial, there should be the affidavits of at least two witnesses, or what is equivalent thereto, against such oath of the juror; otherwise it is but oath against oath, and the verdict will not be set aside on the ground of the incompetency of the juror." The ruling made in that case settles this ground of the motion against the plaintiff in error.

4. Other grounds complaining of different portions of the charge of the court appear in the motion for new trial. We have considered these in connection with the entire charge of the court, and, so considered, the errors committed, if any, are in our judgment so immaterial as not to require elaboration, and present no sufficient cause for a reversal of the judgment refusing the new trial. We find in the record affidavits from jurors in relation to the manner in which their verdict was made, together with certain affidavits of outside parties concerning the same. Jurors can not, of course, be heard to impeach their verdict. The State met these with counter-affidavits, and the whole matter was submitted to the determination of the trial judge. He heard and passed upon all the questions so raised, and we are satisfied that the conclusions reached by him ought to stand. After giving the reasons assigned by the plaintiff in the grounds not specifically mentioned, why a new trial should be granted, careful consideration, we are constrained to believe that no material error was committed either in the rulings or the charge of the presiding judge, and that the circumstances of the homicide failed to support the defense of justifiable homicide. The judgment of the court below is

*Affirmed. All the Justices concurring.*