## ROBINSON v. THE STATE.

1. In a trial for murder the actions, intentions, and motives of both parties to the affray, and all the circumstances making up the res gestæ, may be proved.

2. The conduct and language of both parties at the time of the killing, and in an affray immediately preceding the same, were admissible in evidence. Penal Code, § 998.

3. The language sought to be proved by the excluded testimony was not denied, but was proved by the witnesses for the State and by others for the defense ; under the circumstances the failure to allow it to be established by a particular witness was not cause for a new trial.

4. The judge was not bound to read Penal Code, § 76, having in his general charge instructed the jury as to the form of their verdict, and as to the effect of finding that the killing was justifiable.

5. It was proper for the judge to charge Penal Code, § 65, which emphatically declares that provocation by words "shall in no case be sufficient to free the person killing from the guilt and crime of murder."

Argued May 19, — Decided June 3, 1903.

Indictment for murder.    Before Judge Reagan.    Monroe superior court.    April 27, 1903.

The plaintiff in error was convicted, with recommendation of life imprisonment.    A new trial was refused, and he excepted.    For the other material facts see the opinion.

*John R. Cooper,* for plaintiff in error.

*John C. Hart, attorney-general, O. H. B. Bloodworth, solicitor-general,* and *W. P. Bloodworth,* contra.

LAMAR, J, According to the evidence of the State, half an hour before the homicide there had been an altercation between Robinson, the defendant, and Murphy, the deceased, when the latter cursed the former for a g—d—s— of a b—, drew a knife, and threatened to kill him.    Robinson withdrew and went to a house near by, telling those there that he had been cursed and was going to kill Murphy.    He procured a rifle and returned; whereupon Murphy, seeing him armed with a rifle, attempted to screen himself behind a companion ; but Robinson, finally securing a good aim, fired and killed Murphy.    According to the theory of the defense, Murphy went towards the house in search of Robinson, with a drawn knife in his hand.    Both parties advanced towards each other for the purpose of renewing the fight, and the deceased was shot while in the act of approaching the defendant.    In the light of this evi-

dence it was not error to charge on the subject of mutual combat, and of voluntary manslaughter; in fact the assignments of error on these points were abandoned on the argument here. The charge fully covered the law as to reasonable fears. *Cumming* v. *State,* 99 *Ga.* 662.

In every trial for murder the action, intention, and motive of both parties to the affray are proper subjects for consideration by the jury. All the circumstances of the quarrel, including those immediately preceding the killing, are admissible, and the defendant would be entitled to establish all that went to make up the res gestæ by every witness by whom the same could be proved; for the jury might be willing to believe one and disbelieve the others. In this instance, however, the use of the opprobrious words was not denied, and was proved by the witnesses for the State, as well as for the accused. The failure, therefore, to allow it to be established in this instance by a particular witness worked no harm, and is not ground for the grant of a new trial.

The court charged that "words, threats, menaces, or contemptuous gestures shall not be sufficient to reduce a killing from murder to manslaughter. There must be an assault or other equivalent circumstances sufficient, in the opinion of the jury, to excite the passion and exclude all idea of deliberation whatever." The plaintiff in error says that this was not a matter for the court, but for the jury. Where there has been conflicting argument as to the effect of provocation by words, the jury desire, and certainly are entitled, to be instructed as to the statute on that subject. While the words were admissible as part of the res gestæ, they did not afford a justification for the killing, and it was not error for the judge so to inform the jury. The epithets used were very insulting. In anticipation that it might be claimed that while ordinary insults would not be sufficient, yet if they were unusually and outrageously offensive the provocation by words might be sufficient to justify a homicide, the code meets that argument before it is made: in no case shall provocation by words be sufficient to free the person killing from the crime of murder. It goes even further: in no case shall provocation by words be sufficient to free the person killing from the *guilt* of murder. The section is as emphatic as it is possible for language to be, and in this positive and unequivocal form was enacted by the people's representatives as

the law of the land. In special cases there is a duty first to withdraw; but speaking generally, to take life to save life is no offense; to take life to save from felonious assault is justifiable; to take life in the heat of a passion aroused by an assault is manslaughter; to take life in resentment for words spoken is murder. Words may justify an assault (Penal Code, § 103), but they do not justify a homicide. The tongue is neither a weapon likely to produce death, nor is it the legal equivalent of a blow. That words, threats, menaces, and contemptuous gestures will not justify the taking of human life is as old as our criminal law. It has been reaffirmed and re-enacted four times in this State. By their chosen representatives it is the voice of the people, that, however great the indignation, however hot the passion which they engender, words afford no justification when the State prosecutes for the death of one of its citizens.          *Judgment affirmed. By five Justices.*