## COLEMAN v. THE STATE.

1. Where the law of voluntary manslaughter as defined in section 65 of the Penal Code of 1910 is applicable under the facts and circumstances of a particular case, the failure of the court to define the "other equivalent circumstances" which are sufficient to justify the excitement of passion and to exclude all idea of deliberation and malice affords no ground for a new trial.

2. Words alone, however grievous and insulting, will not constitute "other equivalent circumstances," within the meaning of the Penal Code, § 65, which are sufficient to justify the excitement of passion and to reduce murder to manslaughter.

3. Where the judge charged the law in reference to justification if the slayer acted under the fears of a reasonable man, in accordance with the Penal Code, § 71, and also charged the law touching voluntary manslaughter and the reduction of the homicide from murder to manslaughter, in accordance with Penal Code, § 65, it affords no ground for reversal that he failed, in connection with the latter charge, to specifically instruct the jury as to what consideration might be given to threats and menaces in connection with the doctrine of reasonable fears.

4. The evidence authorized the verdict.

          No. 1416.   JUNE 13, 1919.

Indictment for murder.   Before Judge Graham.   Treutlen superior court.   April 5, 1919.

T. E. Coleman shot and killed his son-in-law, N Berger   The killing occurred in the restaurant of the latter.   On the night of the homicide, Coleman, in response to a request from Berger, went to the restaurant to settle a dispute between the deceased and his wife.   When he reached the restaurant Coleman invited the by-

standers to leave the room, and closed the door. He then inquired as to the cause of the difficulty between the deceased and his wife. Coleman contended that the deceased then repeated to and of his wife, and in the presence of the accused, a vile epithet, at the same time making an effort to get a butcher-knife lying upon a table near where the deceased was standing, and that he shot in self-defense. The evidence for the State tended to show that Coleman killed the deceased solely on account of the repetition of the epithet, and that there were no circumstances of justification or extenuation. The jury returned a verdict finding the accused guilty of the offense of murder, with a recommendation to mercy. He made a motion for new trial on the general grounds, which was subsequently amended. The amendment complains of several charges given by the court to the jury, but in substance the errors assigned may be summarized as follows: (1) Because the court failed to state in the charge to the jury what "equivalent circumstances," as set forth in section 65 of the Penal Code of 1910, would reduce the crime from murder to voluntary manslaughter; it being contended that this principle of law, under the facts of the case, should have been elucidated by the court, as the evidence showed that the deceased charged his wife with infidelity, and used to and of her, in the presence of the accused, vile and insulting language, and was endeavoring by violence or surprise to commit a felony upon the accused. (2) Because the court charged that opprobrious words or vile and insulting language alone, used to and of the wife of the deceased, the daughter of the accused, and in the presence of the accused, would not be sufficient to justify the excitement of passion and to reduce the killing from murder to manslaughter under section 65 of the Penal Code of 1910. (3) Because the court, in connection with his charge defining voluntary manslaughter, and in connection with that portion of the charge in which he instructed the jury that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder" where the killing is done solely on account of and in resentment of such provocation, failed to instruct the jury that words, threats, menaces, and contemptuous gestures could be considered by the jury under the doctrine of reasonable fears, and might, in connection with the facts and circumstances of the case,

be sufficient to justify the homicide. The court overruled the motion for new trial, and the defendant excepted.

*F. H. Saffold* and *A. C. Saffold,* for plaintiff in error.

*Clifford Walker, attorney-general, W. A. Wooten, solicitor-general,* and *M. C. Bennet,* contra.

GEORGE, J. (After stating the foregoing facts.)

1. The complaint that the court did not explain in his charge what would constitute "other equivalent circumstances," within the meaning of section 65 of the Penal Code, is not well taken. There was no request to define these words. It has been expressly held: "What circumstances will present this equivalence and justify the excitement of passion, and exclude all idea of deliberation or malice, the law does not undertake to say; it furnishes a standard, and leaves the jury in each case to make the comparison, and determine whether the special facts of the case before them come up to that standard or not." *Mack* v. *State,* 63 *Ga.* 693, 696; *Findley* v. *State,* 125 *Ga.* 579(4), 583 (54 S. E. 106).

2. This court has, however, held that the "equivalent circumstances" referred to in our statute defining voluntary manslaughter do not include words, threats, menaces, and contemptuous gestures. *Edwards* v. *State,* 53 *Ga.* 428; *Sumner* v. *State,* 109 *Ga.* 142, 143 (34 S. E. 293) ; *Findley* v. *State,* supra. Our statute in express terms declares that "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." In view of this emphatic language, it can not be held that words, however insulting, will in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter, where the killing is done solely on account of the indignation aroused by the use of opprobrious words. Words, however, may justify an assault or an assault and battery, under section 103 of the Penal Code. The indignation may be great, and the passion may be strong; but if aroused by words alone, they are insufficient to either justify a homicide or reduce a homicide from murder to manslaughter. *Robinson* v. *State,* 118 *Ga.* 198 (5) (44 S. E. 985). Mr. Wharton in his work on Homicide, § 173, says: "The nearly universal rule is, that, when the evidence shows an intent on the part of the defendant to kill no words of reproach, no matter how grievous soever. are provocation sufficient to free the party killing

from the guilt of murder." A few courts have made an exception to the rule that opprobrious words do not constitute sufficient provocation to reduce the homicide from murder to manslaughter, in case of words with reference to the wife, and, upon principle, the daughter of the slayer, tending to excite the fiercest of passions. Wharton on Homicide, § 174. This exception, however, seems to be based upon statutory provisions. See Jones v. State, 33 Tex. Crim. 492 (47 Am. St. R. 46, 26 S. W. 1082). The emphatic language of our statute, and the decisions of this court since *Ray* v. *State*, 15 *Ga.* 223, not only do not admit of such exception, but positively deny its existence. The statute, as pointed out by Mr. Justice Lamar in *Robinson* v. *State*, supra, has been reaffirmed and re-enacted four times in this State. The case differs from *Jackson* v. *State*, 132 *Ga.* 570 (64 S. E. 656).

3. In *Ellison* v. *State*, 137 *Ga.* 193 (6), 194 (73 S. E. 255), it was ruled: "Where the judge charged the law in reference to justification if the slayer acted under the fears of a reasonable man, in accordance with the Penal Code (1910), § 71, and also charged the law touching voluntary manslaughter and the reduction of the homicide from murder to manslaughter in accordance with the Penal Code (1910), § 65, it furnishes no ground for reversal that he failed, in connection with the latter charge, to specifically instruct the jury as to what consideration might be given to threats and menaces in connection with the doctrine of reasonable fears;" citing *Futch* v. *State*, 137 *Ga.* 75 (72 S. E. 911). The facts of the present case bring it squarely within this ruling. See also *Deal* v. *State*, 145 *Ga.* 33 (2, 3) (88 S. E. 573), where the practice of submitting separate and independent instructions on the law of voluntary manslaughter and justifiable homicide was expressly approved, and where precisely the same ruling just quoted from *Ellison* v. *State* was made. Both of the questions dealt with in this and in the preceding division of this opinion are concluded by the decision in *Deal* v. *State*, supra.

4. The evidence authorized the verdict.

*Judgment affirmed. All the Justices concur, except Beck, P. J., absent.*