HARTLEY *v.* THE STATE.

No. 6889.   MARCH 14, 1929.

*J. H. King, R. L. Chambers Jr., Josephine McDonald,* and *P. H. Rowe,* for plaintiff in error.

*George M. Napier, attorney-general, George Hains, solicitor-general, T. R. Gress, assistant attorney-general,* and *John M. Graham,* contra.

RUSSELL, C. J.   Ed Hartley was indicted for the murder of Pete Sullivan.   Upon the trial evidence introduced in behalf of the State was to the effect that at the time of the homicide the deceased was so drunk that he could barely stand, and was staggering around on the sidewalk.   He and the defendant engaged in a quarrel about some matter.   The defendant slapped and beat the deceased, who offered no resistance ; and after knocking the deceased down, "the defendant got on his back and beat him some more." Both of them arose from the sidewalk, and the defendant pulled out his knife, opened it, and told the deceased, "I am going to kill you." The deceased replied, "Well, you are going to kill me anyhow, go on and kill me."   Several bystanders begged the defendant not to

cut the deceased, but he "raked him once," and then grabbed hold of the shoulder of the deceased and cut his throat. The defendant made a statement in which he said that the deceased hit him on the shoulder with a brick, that he (defendant) hit him back twice with his fist, that they clinched and fell, and that the deceased "started to pick up another brick, and I run into him and cut him." He further stated that the deceased had shot him through the leg about four months before, and that he was known to him as a man of violence who carried a pistol practically all the time. A witness for the defendant testified that the dead man reached down and got a stone and drew back as if to throw at the defendant, and did throw it and hit the defendant, and that when he reached back for another stone the defendant struck him with his fist, and, as the deceased raised up, struck him with the knife. There was evidence that in the quarrel which took place five or ten minutes before the killing, the deceased told the defendant to "go on away," and picked up a rock, which might have been a little larger than a hen egg, and threw it at the defendant. The defendant introduced witnesses who testified that the deceased had a reputation for violence in the community in which he lived. Witnesses for the State testified that they did not see the deceased trying to pick up a brick, and that on the contrary he was not doing anything, and was standing up with his hands down, staggering, and could not support himself. The jury found the defendant guilty, without recommendation. He filed a motion for a new trial, which was overruled, and he excepted.

In the first special ground of the motion for a new trial it is complained that the court charged the jury that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder," it being contended that the charge was error in that it should not have been given without qualification to the effect that threats, menaces, etc., might be sufficient to arouse a reasonable fear in the mind of the defendant, so that the killing would be done in self-defense and thus be justifiable. A reading of the charge of the court as a whole discloses that the excerpt complained of was given in connection with the charge of the court upon the subject of voluntary manslaughter. The judge charged the jury as to the circumstances which must appear before a felonious homi-

cide would be reduced from murder to manslaughter. He then charged, "and then they say what won't reduce it, though," and then followed the excerpt from the charge as to provocation by words, threats, menaces, or contemptuous gestures, followed by the remaining provisions of section 65 of the Penal Code. It appears from the charge that the court instructed the jury upon each of the three defenses set up by the defendant,—self-defense, the fears of a reasonable man, and mutual combat. The court first charged on the subject of reasonable fears, next upon the subject of self-defense, and then charged the jury "under what circumstances a homicide will be reduced, if one has been committed, without justification or excuse," and following this appears the charge upon the general subject of manslaughter, following the terms of section 65 of the Penal Code. Immediately following this charge upon the subject of manslaughter the judge stated to the jury that there was "a third defense, entirely separate and distinct from the other two given, . . not to be confused with the other defenses that I have outlined to you," and charged upon the law of mutual combat, stating to the jury that this defense should not be "confused with the separate defenses of justifiable homicide and acting under the fears of a reasonable man, about which I have already charged you, as it does not limit or qualify those defenses in any respect."

It. is well settled that in charging upon the law of voluntary manslaughter as contained in section 65 of the Penal Code it is not error for the court to fail or refuse to charge, in immediate connection therewith, as to the right of the jury to consider words, threats, or menaces in determining whether the circumstances attending the homicide were such as to justify the fears of a reasonable man that his life was in imminent danger or that a felony was about to be committed upon his person. *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573); *Vernon* v. *State,* 146 *Ga.* 709 (3), 713 (92 S. E. 76). Indeed, it has been held to be erroneous for the court, in its charge to the jury, to mingle "the law of defense of person or life with the definition of voluntary manslaughter, which necessarily tends to a confusion of these two phases of homicide." *White* v. *State,* 147 *Ga.* 377, 382 (94 S. E. 222). As the portion of the charge complained of was given by the court in stating the law of voluntary manslaughter, it was not error for the court to fail to qualify the statement given, by presenting in connection

therewith the principle that words, threats, or menaces, under the facts of the case, might be sufficient to arouse the fears of a reasonable man that his person was in apparent danger of a felonious attack or that his life was in imminent danger. *Deal* v. *State,* supra; *Coleman* v. *State,* 149 *Ga.* 189 (99 S. E. 627). See also *Alford* v. *State,* 149 *Ga.* 518 (101 S. E. 115). In the *Deal* case the practice of submitting separate and independent instructions on the law of voluntary manslaughter and of justifiable homicide was expressly approved. The above ruling disposes of the complaint presented by this ground of the motion. There is no insistence that the court did not properly charge upon the subject of the fears of a reasonable man, and there was no request that the jury be instructed that in passing on the question of reasonable fears they could take into consideration any threats or menaces made by the deceased to the defendant.

The second special ground sets forth that the court, in charging the jury as to what constituted manslaughter, stated that "manslaughter is the killing of a human being," etc., but omitted the word "unlawful" before "killing," and that the omission to charge the jury that the killing must be unlawful eliminated an essential element of the offense of voluntary manslaughter. It appears that the trial judge was charging the jury upon the law of manslaughter. It is true that one of the essential elements of the offense of voluntary manslaughter is that the killing must have been unlawful. However, we are unable to see how the omission of the word "unlawful" from this charge could have been harmful to the defendant. This charge was being given to guide the jury in reaching a decision as to whether the defendant was guilty of murder or of the lesser offense of voluntary manslaughter. The omission of the word "unlawful" in the definition of manslaughter could not have prevented the jury from determining that the defendant was guilty of the lesser offense of voluntary manslaughter, and this is the sole error of which the defendant can complain under his exceptions. It appears from the verdict of murder, without recommendation, that the jury did not believe that the defendant was guilty of voluntary manslaughter, and, as stated, we are unable to hold that the omission of the word "unlawful" before "killing" could have contributed to this finding.

The third special ground is as follows: "That Cherry Hankin-

son, a witness called on in behalf of the defendant, under examination by the court, testified as follows: The court: 'Cherry, you say this dead man threw a rock at this fellow?' A. ' Yes, sir.' Court: 'Well, how long after that was it that the cutting happened?' A. 'Well, I don't know, sir.' Court: 'Was it five or ten minutes?' A. 'Well, it might have been probably ten minutes, or a little more.' Court: 'And then what happened at the time of the cutting?' A. 'Well, just in a stiff argument, quarreling, and the live man cut him.' The solicitor in his argument referred to this question asked by the court, relative to the lapse of time from the throwing of the brick to the time of the cutting, and the solicitor then said to the jury: 'Gentlemen, you heard the court ask Cherry Hankinson how long it was from the time Pete Sullivan struck Ed Hartley until Ed Hartley cut him. Gentlemen, you know why the court asked that question; you know what the court meant when he asked that question. This is a case of murder, and not manslaughter.' That the said remark of the solicitor intimated to the jury, by the questions which the court had asked, that he, the court, had expressed an opinion that it was murder and not manslaughter." As will be noted, this ground of the motion contains no assignment of error, nor is it clear what complaint the defendant seeks to make regarding the matters set forth in this ground. If it be construed as complaining of the argument of the solicitor, a sufficient statement to show this ground not to be meritorious is to say that it is not alleged that the defendant made any objection to this argument, or that the court was asked to instruct the jury in regard to it, or to rebuke the solicitor-general, or to declare a mistrial.

In the fourth ground complaint is made that the solicitor, over the timely objections of defense counsel, used improper argument to the jury, which was prejudicial to the defendant, as follows: "Gentlemen of the jury, at the time this atrocious murder was committed, the grand jury of your county was at that time considering some five or six murder cases. Gentlemen, while your grand jury was considering these other murder cases, that man went out here in the face of all that and killed a man." The objections presented to the court were that "the form of argument was prejudicial; that the fact that the grand jury was in session was no concern of the jury that was trying the case at bar; that the solicitor be instructed

to argue within the evidence or a reasonable deduction therefrom; that the jury should be instructed not to consider any improper argument," and that the court, after hearing the objections, failed to reprimand the solicitor, or to instruct the jury not to consider any improper argument, the court only saying, "The grand jury had nothing to do with the case, Mr. Solicitor. Stay within the evidence." It is further set forth in this ground that near the conclusion of the solicitor's argument he used the following language: "Gentlemen of the jury, it is my duty as solicitor of this circuit to present to you the facts of the case as I find them; that is what I do with all cases tried in my circuit. It is not up to me to do anything more than that." It is stated in this ground that "counsel for the defense felt it useless, at the conclusion of the solicitor's argument, to ask for a mistrial, after the court had ruled upon the objections made by counsel for the defense." We think the reprimand of the court, addressed to the solicitor, was sufficient to sustain each objection presented by the defendant, in that the jury could but have inferred from this reprimand that the argument presented by the solicitor had nothing to do with the case and was not within the evidence, and therefore not entitled to their consideration. As to the second portion of argument excepted to, after a portion of the recital of such argument had been disapproved by the trial judge, there was left only that set forth above, and as to this it suffices to say that it is not improper argument for the solicitor to tell the jury that "it is my duty as solicitor of this circuit to present to you the facts in this case as I find them; that is what I do with all cases tried in my circuit. It is not up to me to do anything more than that."

<em>Judgment affirmed. All the Justices concur.</em>