## WHITE v. THE STATE.

1. Defects in an indictment afford no ground for a new trial. Ex- ceptions which go merely to the form should be made before trial. For matters affecting the real merits, the remedy, after trial, is by motion in arrest of judgment.

2. When it appears upon the face of an indictment that a named grand juror served as "foreman *pro tem.*," and the finding of "true bill" was signed by him as such, the presumption is that the juror was properly serving as foreman in that case.

3. If the accused, acting *bona fide* as the agent of another, bought liquor for the latter with the latter's money and delivered it to the person for whom it was bought, these facts did not constitute a

sale of liquor by the accused, whether the person from whom he bought was legally authorized to sell or not; but if in a *prima facie* case of guilt he made a statement to the jury and therein gave an explanation of the transaction which was a mere subterfuge to cover up an unlawful sale of liquor by himself, the jury would be authorized to find him guilty.

4. The indictment having been found on the 18th of October, 1892, the trial having taken place on the 2d of September, 1893, and the evidence showing that the sale of the liquor was made within the two years immediately preceding the trial, but not otherwise indicating the time of the sale, it did not affirmatively appear that the sale was made before the indictment was found, and consequently the verdict of guilty was unauthorized.

January 27, 1894.

Indictment for misdemeanor. Before Judge TURNBULL. City court of Floyd county. September term, 1893.

The defendant was convicted of selling liquor without license, and his motion for a new trial was overruled. The only witness, Copeland, testified as follows: Defendant was a blacksmith in Cave Spring, Floyd county. Within the last two years witness gave him thirty cents and asked him to obtain some whisky for witness. Defendant went off up the Alabama road and returned in 15 or 20 minutes, bringing a pint of corn whisky. At that time there was no licensed seller of whisky in Cave Spring. Witness knew of no one that was selling whisky at that time, and asked defendant to get it for him, thinking defendant might be able to find some. He went to defendant's shop to get the whisky because he was told he could get it by going there and seeing defendant, and he could get it for him. One Highfield was selling whisky about three miles from Cave Spring. Witness had obtained whisky from defendant two or three times within the last two years. Did not remember ever to have seen any one else obtain whisky there. At any time when he obtained whisky through the defendant, he would give defendant the thirty cents in advance, defendant always being without any money.

He would go off and not be gone longer than 20 minutes, and would return with the whisky.—The defendant stated, in brief, that he had no intention of violating the law, and when informed that it was wrong for him to go for whisky for white gentlemen, he ceased to do it, and has not since gone for any; and that he never charged or received anything for the service, and made no profit in the transaction, but he merely wanted to accommodate Copeland. At the time of which Copeland spoke, one Sutton had come to Cave Spring from Alabama and had just offered whisky to defendant at his shop. Defendant told him he was not able to buy any, and Sutton went off. About that time Copeland came inquiring about whisky, and defendant told him perhaps he could get some from the wagon which had just left. He took the thirty cents from Copeland, overtook the wagon, bought the whisky for thirty cents and carried it to Copeland. He paid all the money he received for the whisky, and received no benefit therefor. He did not remember at any time before ever having obtained any whisky for Copeland, except at the time named. It was possible that he had gone for whisky at another time and obtained it from Highfield's wagon.

The court charged the jury: "In a town where there is no license to sell liquor of any sort, a person who obtains money from another for the purpose of obtaining whisky, and who shortly afterward delivers the whisky, may be presumed to be the seller, if no other person filling that character appears. If you believe from the evidence that the defendant did in good faith take money from Copeland, and, acting as the agent of said Copeland, purchase whisky from a regular authorized dealer without interest or profit to himself, then you would find the defendant not guilty But if, on the other hand, you believe that the explanation made by the defendant was a mere subterfuge to cover up an illegal transaction,

v 93-4

then it would not be sufficient, and you would be authorized to find him guilty." The motion for a new trial assigns errors on these instructions, and alleges that the verdict was contrary to law and evidence. It also alleges that the indictment was not legal, for certain reasons, as to which see the first and second parts of the opinion.

HOSKINSON & HARRIS, for plaintiff in error. W. J. NUNNALLY, solicitor-general, by W. J. NEEL, contra.

SIMMONS, Justice.

1. The exceptions to the indictment were not properly taken. They were made in the motion for a new trial, the overruling of which is the error complained of in this court, but do not appear to have been made elsewhere. Exceptions which go merely to the form of an indictment should be made before the trial (Code, §4629); and even if made and ruled upon then, cannot properly be made the basis of a motion for a new trial. *Flemister* v. *The State*, 81 *Ga.* 768. For matters affecting the merits, the remedy after trial is by motion in arrest of judgment, and not a motion for a new trial. This court, it is true, in *Wood* v. *The State*, 46 *Ga.* 324, considered and sustained an exception which would have been good in arrest of judgment, though made in that case in the motion for a new trial, but disapproved the practice of including such exceptions as this in motions for a new trial, and said "a motion in arrest of judgment is the proper mode of getting at such a defect as this, since if the indictment is bad, a new trial cannot be had upon it." "We know of no authority for demanding a verdict on a bad indictment." See also *Gibson* v. *The State*, 79 *Ga.* 345(2).

2. Clearly there is no merit in the exception that the name of the legally elected foreman of the grand jury does not appear upon the bill of indictment, and that

consequently it does not legally appear that the grand jury passed upon the bill and found it true. In the transcript of the record the indorsement " true bill " appears on the indictment, and under it the words "Frank W. Quarles, Sr., Foreman"; and in the list of grand jurors with which the indictment opens, the same name appears, and is the first on the list, though he is there designated as " foreman *pro tem.*" In *McGuffie* v. *The State*, 17 *Ga.* 498(8), the view is expressed that the signature of the foreman to the return of " true bill" is not essential; but if it is, the presumption is that the person who signed acted as foreman with the authority of the grand jury. (*Grinad* v. *The State*, 34 *Ga.* 270.)

3. In the case of *Grant* v. *The State*, 87 *Ga.* 265, it was ruled that, " in a prohibition county, a person who receives money from another with a request to procure whisky, and who shortly afterward delivers the whisky, may be treated as the seller if no other person filling that character appears, and if it is not shown where, how or from whom the whisky was obtained." See also *Paschal* v. *The State*, 84 *Ga.* 326. If it should be made to appear that he bought it from another, and acted simply as the agent or friend of the person to whom he delivered it, paying that person's money for it and having himself no interest in the liquor sold or in the money after it was paid, he would not be guilty of selling. It would not be necessary for the accused to show that the person from whom he bought was a legally authorized dealer. If the accused was the agent of the buyer and not of the seller, it does not matter whether the person from whom he obtained the liquor was legally authorized to sell or not; the mere aiding and abetting an illegal sale in this way would not render him guilty as a seller. Decisions are numerous in other States, to the effect that the purchaser, although he knows that the circumstances will render the sale illegal, is not

guilty of any offence by soliciting the seller to violate the law, or by aiding and abetting the crime to the mere extent of buying the liquor, unless the statute expressly prescribes a punishment for him (see Black on Intoxicating Liquors, §381, and cases cited); and there is nothing in our own statutes or the decisions of this court to the contrary. See especially on this subject the reasoning of Shaw, C. J., in Commonwealth v. Willard, 22 Pick. 476, quoted in the work of Mr. Black, above cited. The instructions complained of in the 6th ground of the motion for a new trial seem to require the accused to show that the person from whom he obtained the liquor was a regularly authorized dealer; and they are to that extent objectionable. As to the concluding clause of these instructions, it is sufficient to say, that it being incumbent on the accused to explain where, how and from whom he got the liquor, and his own statement being the only explanation offered, the jury would be authorized to reject it and find him guilty if they believed it was a mere subterfuge to cover up an unlawful sale by himself.

4. The verdict is not sustained by the evidence, for the evidence fails to show that the transactions in proof took place before the finding of the indictment. The indictment was found on the 18th of October, 1892, the trial took place nearly a year after that date, to wit, in September, 1893, and the evidence failed to show anything as to the time when the liquor was obtained, further than that it was within the two years immediately preceding the trial. So for aught we can know from this record, the accused may have been convicted upon proof of an act for which he was not indicted. To authorize a conviction it must appear affirmatively that the sale was made before the indictment was found. *Patton* v. *The State*, 80 *Ga.* 714. *Judgment reversed.*