## CUNNINGHAM *v.* THE STATE.

Although one may lawfully act as agent for two or more principals in the same transaction, if his duty to each does not require incompatible things in such transaction, yet when it appears that C., at the request of N., undertakes to purchase for the latter a quantity of spirituous liquor, in a county where such sales are unlawful, and M., the owner of the liquor, is informed of the fact of such agency and declines to sell on a credit, but delivers to the agent the liquor desired, with instructions to bring him back the money which is the agreed purchase-price, or return him the liquor, such facts do not constitute C. the agent of M. to sell; and the receipt of the purchase-price by C. from N., and the delivery of the liquor under those circumstances. to N. by C., does not render him subject tó the provisions of the law which prohibits sales of liquor.

Argued October 4, — Decided October 13, 1898.

Indictment for selling intoxicating liquor. Before Judge Hammond. City court of Griffin. September term, 1898.

*T. E. Patterson,* for plaintiff in error. *O. H. B. Bloodworth, solicitor-general,* and *J. M. Kimbrough Jr.,* contra.

Little, J. Plaintiff in error was indicted by the grand jury of Spalding county, in which the provisions of the act known as · the " local option act " are in force, with the offense of selling intoxicating liquor to one C. A. Nunnally. The case was tried in the city court of Griffin. The jury returned a verdict of guilty, on which the court passed judgment, and the defendant made a motion for new trial. Besides the general grounds, that.

the verdict is contrary to the evidence and without evidence to support it, and that it is contrary to law, the plaintiff in error alleged that the court erred in charging the jury as follows.: " If you believe from the evidence that the defendant, at the instance of Nunnally, undertook to get whisky for Nunnally, and in pursuance of such instructions went to Manley for the whisky, at Nunnally's request, and Manley declined to let defendant have the whisky on Nunnally's request, but delivered the liquor to defendant and told him to bring the whisky back, or the money for it back; and if you believe, under such instructions from Manley, defendant undertook to deliver the liquor to Nunnally and collect the price thereof from Nunnally, such an arrangement would make the defendant the agent of Manley, although you may believe he was also the agent of Nunnally. One may be the agent of two parties at the same time. And if you believe from the evidence that, under such instructions from Manley, defendant took the whisky and delivered it to Nunnally, and received from him the money for the same, you would be authorized to find the defendant guilty." A further ground of the motion alleges as error the refusal of the court to charge the jury as requested, and that in that portion of the charge before set out, the court intimated what had been proven in the case. The motion for new trial was overruled, and the plaintiff in error excepted.

Briefly stated, the evidence was to the following effect: Nunnally testified that at the court-house in Griffin on the 2d of March, 1897, he approached Cunningham to get some whisky. Cunningham said he did not have any, but would try to get some for witness. Witness and Cunningham went up-town after the adjournment of court, and Cunningham went off and came back to the rear of a store where the witness was, and delivered to him two half-pints of whisky, for which witness paid Cunningham fifty cents. Witness testified further, that he was paid five dollars for making the case against Cunningham, but did not know at the time of the transaction that any reward was offered. Another witness testified that he saw Cunningham deliver the whisky to Nunnally, and receive from Nunnally fifty cents. Witness was at that time on the watch, because he had heard that

some whisky would be delivered to Nunnally there. Another witness (McWilliams) testified that he was present and heard the conversation between Nunnally and plaintiff in error; that Nunnally asked Cunningham to get him some whisky; Cunningham replied that he (Nunnally) could get it as well as he (Cunningham) could; Nunnally said they would not sell to him, that Cunningham knew them better than he, and could get it for him. Another witness (Alford) testified that he was in Manley's room when Cunningham came in; that he told Manley that he desired to buy some whisky for Nunnally; Manley asked him if he brought the money; Cunningham replied that he did not; and Manley then delivered to Cunningham two half-pints of whisky and told him he must bring him the money or return the whisky. This was, in substance, all the evidence in the case.

While the provisions against the sale of intoxicating liquors in jurisdictions where the local option act is in force should, for many reasons, be strictly enforced, we are not satisfied that this verdict should stand. The plaintiff in error may have been guilty of the offense as charged, but the evidence, as we understand it, does not necessarily show that he is. As a proposition of law, it is undeniably true that if neither the principal nor the agent be authorized by law to make a sale of intoxicating liquor, an agent who makes such sale is personally punishable for the act; and it is no defense that the person indicted acted merely as the agent or employee of another. Black, Intoxicating Liquors, 372, citing a number of authorities in note 30, p. 433.

Section 6 of the act approved September 18, 1885, known as the "local option act," declares that "it shall not be lawful for any person within the limits of such county [where the act is in force] to sell or barter for valuable consideration, either directly or indirectly . . intoxicating liquors," etc. Mr. Black, in his work on Intoxicating Liquors, §403, says that "there are a great variety of cases in which the property and possession of liquors are transferred from one person to another, which do not come within the legal and technical meaning of the word 'sale,' and yet are obviously within the mischiefs intended to be remedied by the statute. In such instances, if the

statute in terms specifies no other kinds of transfer than sale, the courts frequently are confronted with embarrassing questions."

The plaintiff in error was charged simply with making a sale, and hence, to be lawfully convicted, it must be shown that he sold the liquor.    And, defining the word "sale," in this connection, citing 8 Howard, 495, 544, the author from whom we last quoted says: "It means at all times a contract between parties to give and to pass rights of property for money which the buyer pays or promises to pay to the seller, for the thing bought and sold."    While we do not rule that there can be no sale in the sense of our statute except for money, we refer to this definition as illustrating the legal definition of a sale which applies to a transfer of the title of intoxicating liquors as being a contract between the parties to pass the right of property to the seller for the thing bought and sold.    To uphold the conviction in the present case, the evidence must therefore show that there was a contract between the plaintiff in error and Nunnally that the former should pass to the latter the right of property in the whisky delivered, and that Nunnally should have paid or promised to pay the agreed consideration for the whisky.

It is certainly true, as a legal proposition, that in contracts of bargain and sale one may act through an agent.    That a person may act as agent of two or more principals in the same transaction, if his duties to each are not such as to require him to do incompatible things, is equally sound as a proposition of law.    Mechem, Agency, §67.

Where one in a prosecution under the liquor law interposes as a defense that he was not the seller of the liquor, but acted as the agent or intermediary of the buyer, agency is a question of fact to be determined by the jury under the evidence.    As a matter of law applicable, this court has held that if the accused merely bought whisky for another, using the money of the latter in making the purchase, this did not, either as a matter of law or of fact, constitute the accused the agent of both the seller and the buyer.    If nothing more appeared, the agency was for the buyer.    *Evans* v. *State,* 101 *Ga.* 780.    And in the case of *White* v. *State,* 93 *Ga.* 47, the court ruled: "If the accused,

acting bona fide as the agent of another, bought liquor for the latter with the latter's money and delivered it to the person for whom it was bought, these facts did not constitute a sale of liquor by the accused." To relieve one who interposes such a defense, however, the fact of agency must be shown; for one who receives money and delivers whisky therefor may be treated as the seller, no other person filling that character in the transaction being pointed out by the evidence. *Paschal* v. *State*, 84 *Ga.* 326; *Grant* v. *State*, 87 *Ga.* 265. It is therefore material, in passing on the guilt of the accused in this case, to determine whether, under the facts as they appear, plaintiff in error can be held to have acted as the agent of Nunnally in procuring the whisky. The evidence clearly shows that the whisky which Nunnally obtained was not owned by plaintiff in error. It is not necessary that the person prosecuted for the act of selling should own the liquor (30 Conn. 55); but ownership is one of the elements which may well be looked to in determining who made the sale. The evidence further is, that when the plaintiff in error was approached by Nunnally, who desired to get some whisky from him, he told Nunnally he did not have any, but would try to get him some. According to the testimony of another witness (McWilliams), who says he was present, Nunnally asked the plaintiff in error to get him some whisky, and gave some reason why the plaintiff in error would be able to get it for him. It will therefore be concluded that the original purpose of Nunnally in his interview with Cunningham was not to purchase the liquor from the latter, but to induce Cunningham to purchase the whisky for him from a party who owned it. The testimony of another witness (Alford) who was present at the time when Cunningham procured the whisky from Manley is to the effect, that when Cunningham went to the owner of the whisky, he disclosed the fact of his agency, saying that he wanted to buy some whisky for Nunnally. Therefore Nunnally treated and recognized Cunningham as an agent to procure the whisky for him; and the owner of the whisky was also put on notice that Cunningham was not purchasing the whisky for himself, but for Nunnally. The purpose of the agent being thus disclosed, the owner of the whisky then asked if he brought

the money, that is, if Nunnnally sent the money. Ascertaining that Nurinally had not sent the money, the owner notwithstanding, delivered to the agent the desired amount of whisky, and told him that he must bring him the money or return him the whisky. When Manley thus delivered the liquor to Cunningham, while it went into the manual possession of Cunningham, it could scarcely be contended that Manley intended by this act to constitute Cunningham his agent to sell the whisky to Nunnally. He had been told that it was Nunnally who desired to purchase the whisky; that Nunnally had not sent by his agent any money to purchase it. Manley declined to sell it on a credit, which it was the evident object of the agent to accomplish. Manley was willing to sell to Nunnally for the money. When he, therefore, delivered the whisky to Cunningham, with instruction to bring him the money or to return the whisky, he in effect told Nunnally, through his agent, upon what terms he could purchase the whisky. These facts being communicated by Cunningham to Nunnally, the latter accepted the terms and closed the contract by sending the money through his agent to Manley. The contract was one of bargain and sale between Manley, the owner, and Nunnally, the purchaser, in which negotiations for the purchase were opened by Nunnally through his agent, Cunningham, and completed by such agent in delivering the purchase-price to the seller. In the case of Commonwealth v. Williams, 4 Allen, 587, the Supreme Judicial Court of Massachusetts approved a charge of the trial judge to the following effect: "If the defendant made an actual sale of the liquor, whether on his own account, or assuming to act as agent in the matter for [another], and whether the liquor belonged to him or not, and whether he had or had not authority from [that other] so to do, he would be responsible. . . But, on the other hand, if the defendant merely informed some third person that Jason wished to buy, and was supplied by such third person with the liquor to deliver to Jason, and received of Jason the money to deliver to the seller, so as, in effect, to be but a messenger between the buyer and seller. the defendant would not be criminally responsible." This ruling seems to us to embody the law of this case. The evidence in the record does not establish the

fact that the sale was made by the plaintiff in error. Therefore the verdict rendered is not supported by the evidence, and should be set aside.

It follows from what has been said that that part of the charge of the court which instructed the jury that, if they should believe that under instructions from Manley, the defendant undertook to deliver the liquor to Nunnally and collect the price thereof from Nunnally, such arrangement would make the defendant the agent of Manley, although the jury might believe he was also the agent of Nunnally, was error.

The principle ruled in this case is clearly distinguishable from the ruling in the case of *Crabb* v. *State*, 88 *Ga.* 584. In that case Crabb, who was the agent of the Southern Express Company in a county in which the sale of spirituous liquors was prohibited, was convicted for selling liquor, on proof that the whisky was sent by express with instructions from the consignor to collect the purchase-price on delivery, and that in pursuance of such instructions of the consignor, Crabb delivered the whisky and received from the purchaser the amount agreed to be paid; and this court ruled, that where such an agent makes the delivery and collects the money agreed to be paid to his principal, such agent is subject to indictment, if he acts knowingly in completing the sale. In other words, Crabb was never at any time the agent of the purchaser. He was exclusively the agent of the seller. When the liquor was delivered to the Express Company by restrictions in the order to collect on delivery, such delivery to the carrier was not a delivery to the consignee, and no contract of sale had been completed until delivery was made; and when the agent delivered the goods and collected the purchase-price, which was required in order to complete the sale, he necessarily participated in the sale, and was therefore liable as a seller. It will be noted that in the case of Crabb, the court held the indictment to lie if the agent acted knowingly in completing the sale. This is good law, and has been so held by other courts. In the case of State *v.* Goss, 59 Vt. 102, the facts were, that a box containing lager-beer was sent by express to a person in Vermont, collect on delivery; that it was unlawful to make a sale of beer in Vermont; the express agent collected the pur-

chase-price and delivered the box; and he was indicted for selling. One of his defenses was, that he had no knowledge of what the box contained. On this point the court say: "The turning-point of this case is, whether the respondent had reason to believe or suspect (for it appears that he did not know) that these packages contained what they did. If he did, he is charged with notice of their contents, and is guilty. If he did not, he is not charged with such notice, and is not guilty." We think the ruling in the *Crabb* case is sound, both upon principle and authority; but, as has been seen, it is clearly distinguishable from the case under consideration. Whether the plaintiff in error acted as the agent of Nunnally, as we have stated, is a question of fact. In our judgment the evidence on the trial of this case constituted him such agent and not a principal; and for this reason the judgment of the court below is

*Reversed. All the Justices concurring, Lumpkin, P. J., dubitante.*