## BOSWELL *v.* THE STATE.

1. An exception to the overruling of a demurrer to an indictment can not be properly made in a motion for a new trial.
2. If an indictment is on its face fatally defective because based on an unconstitutional statute, or on one which for any reason is not a valid and subsisting law, advantage of such a defect must be taken by demurrer before pleading to the merits, or by motion in arrest of judgment after verdict.
3. An expert may testify to an opinion of his own derived from books.
4. The evidence authorized the verdict, and there was no error requiring the granting of a new trial.

Argued October 22,—Decided November 5, 1901.

Indictment for poisoning a well. Before Judge Hart. Putnam superior court. September term, 1901.

*M. F. Adams* and *J. W. Preston,* for plaintiff in error.
*H. G. Lewis, solicitor-general,* and *W. F. Jenkins & Son,* contra.

COBB, J. The accused was placed on trial upon an indictment, based upon the act of December 19, 1896 (Acts 1896, page 84),

charging him with the offense of poisoning a well, and was convicted. His motion for a new trial having been overruled, he excepted.

1. Upon arraignment the accused filed a demurrer to the indictment, which was overruled. There is no assignment of error upon the judgment overruling the demurrer, save in the motion for a new trial; and it is well settled now that an exception to a judgment overruling a demurrer to an indictment can not be properly made a ground of a motion for a new trial. *Flemister* v. *State*, 81 *Ga.* 768 (2); *Robson* v. *State*, 83 *Ga.* 166.

2. Complaint is made in the motion for a new trial that the entire trial was void, for the reason that the act under which the accused was prosecuted was unconstitutional, because the body of the act contains matter which is not referred to in the title. If an indictment fails to charge an offense against the law, for the reason that the statute upon which it is based is unconstitutional, or for any other reason is not a valid and subsisting law, such a defect in the indictment can be taken advantage of only by demurrer before pleading to the merits, or by motion in arrest of judgment after verdict. That an indictment charges no offense is no reason for granting a new trial on that indictment; and for this reason such a defect in an indictment can not be properly made a ground of a motion for a new trial. See *Eaves* v. *State*, 113 *Ga.* 750 (7), and cases cited. It is true that in the case of *Wood* v. *State*, 46 *Ga.* 322, it was held that a motion for a new trial on the ground that an indictment was fatally defective, though not strictly proper, would be sustained under the practice in this State. But Judge McCay in the opinion says: "We know of no authority for demanding a verdict on a bad indictment. Under our law the jury find their verdict from their own judgment, and not by direction from the judge. We think, too, the practice is a bad one. Perhaps, on a new indictment the court might hold the first indictment good, and an acquittal on it a bar. Under our practice the motion for a new trial generally covers any ground that would be good in arrest of judgment. At least it has long been the practice to include in a motion for a new trial such exceptions as this, and we will not disturb the practice, though strictly a motion in arrest of judgment is the proper mode of getting at such a defect as this, since if the indictment is bad, a new trial can not be had upon it." It is also true

that in the case of *Tate* v. *Cowart*, 48 *Ga.* 540, there appears a statement, both in the headnote and in the opinion of Mr. Chief Justice Warner, to the effect that when a motion for a new trial contains a ground which would be a proper ground of a motion in arrest of judgment, the motion for a new trial will be treated as a motion in arrest of judgment. Upon an examination of that case, however, it will be found that the statement in the opinion was purely obiter, and that the headnote was made by the reporter. It seems that neither the ruling in the *Wood* case, nor the dictum of Judge Warner in the *Tate* case, has ever been followed. On the contrary, in the case of *White* v. *State*, 93 *Ga.* 47, it was distinctly ruled that defects in an indictment afford no ground for a new trial, and that for matters affecting the real merits the remedy after trial is by motion in arrest of judgment. In the opinion in that case Mr. Justice Simmons distinctly refers to the *Wood* case, and calls attention to the fact that while an exception which would be good in arrest of judgment was sustained in that case notwithstanding it was made a ground of a motion for a new trial, still the practice was distinctly disapproved by the judge who wrote the opinion. The ruling made in the *Wood* case has never, so far as we have been able to ascertain, been followed; and the ruling made in the *White* case has been uniformly adhered to, and was distinctly followed in the *Eaves* case, cited above. It was the unanimous opinion of three judges in the *White* case, that the ruling in the *Wood* case was not controlling as authority; and this opinion, "whether right or wrong, has the same binding force upon subsequent members of the court, as is given any unanimous decision of the court" by the law now contained in the Civil Code, § 5588, which declares that a decision concurred in by three judges can not be reversed or materially changed, except by a full bench, and then only after argument had, in which the decision is, by permission of the court, expressly questioned and reviewed. See, in this connection, *Weaver* v. *Carter*, 101 *Ga.* 209; *Smith* v. *Ins. Assn.*, 111 *Ga.* 737, 740. We are, therefore, at liberty to treat the *Wood* case as no longer binding as authority; and we must regard the *White* case as fixing the proper rule of practice.

3. The State introduced as witnesses two physicians, each of whom testified that in his opinion bluestone was a poisonous substance, but upon cross-examination stated that he had never had

any practical experience with cases of poisoning by bluestone, but derived his information on the subject solely from medical books dealing with the subject of poisons. This evidence was objected to upon the ground that it was hearsay, and that an expert should not be allowed to testify as to any matter that did not come within the range of his own experience. Books of science and art are not admissible in evidence to prove the opinions of experts therein expressed. *Cook* v. *Coffey*, 103 *Ga.* 384, and cases cited. But, notwithstanding the inadmissibility of the books, the opinions contained therein may come to the jury through the mouth of an expert witness. Lawson's Ex. & Op. Ev. (2d ed.) 213; *Mayor* v. *Boone*, 93 *Ga.* 662; *Cen. R. Co.* v. *Mitchell*, 63 *Ga.* 173.

4. The motion for a new trial contained several other grounds, one complaining of the admission of certain evidence, but it does not appear in the motion what objection, if any, was made to the evidence. Another ground complains of certain remarks made by the solicitor-general in his argument, but it does not appear that any exception was taken to the argument at the time, by motion for mistrial or otherwise. Still another ground of the motion complains that the judge intimated an opinion on the evidence, but does not set forth the language complained of; the ground merely stating that the judge intimated an opinion by making reference in his charge to an alleged confession made by the accused, when it was contended that the accused had made no confession. Under well-established practice, these grounds present no assignments of error with which this court can deal.

What has been said disposes of all of the grounds of the motion for a new trial, except that which complains that the verdict is contrary to the evidence. It was argued with great earnestness by counsel for the plaintiff in error that the evidence did not authorize the jury to find that the water in the well had been poisoned by the bluestone which it was claimed had been placed therein. There was evidence that several persons were made sick by drinking water from the well after the bluestone had been placed therein, and that this sickness was attended with recognized symptoms of bluestone poisoning. It is, therefore, necessary to determine what is meant by the word "poison" as used in the statute. Applying the familiar rule, that words must be taken in their ordinary sense, we find that the word "poison" has been defined by the lexicogra-

phers and law-writers as follows: " An agent which, when introduced into the animal organism, is capable of producing a morbid, noxious, or deadly effect upon it." Webster's Int. Dict. "Any substance that when taken into the system acts in a noxious manner by means not mechanical, tending to cause death or serious detriment to health." Stand. Dict. " A substance of definite chemical composition, which, when taken into the living organism, is capable of causing impairment or cessation of function." Bouvier's Law Dict. Dr. Wormley defines the term as follows : " Any substance which, when taken into the body, and either being absorbed, or by its direct chemical action upon the parts with which [it comes] in contact, or when applied externally and entering the circulation, is capable of producing deleterious effects." See Ewell's Med. Jur. 303. Dr. Taylor, in his work on Medical Jurisprudence, after stating that in a restricted sense the term poison is applied only to those substances which in small doses destroy life, observes that this definition is entirely too restricted for the purposes of medical jurisprudence, and that the *quantity* required to destroy life, even if it could be always accurately determined, can not enable us to distinguish a poisonous from a non-poisonous substance. The author then concludes by defining poison to be, " a substance which, when absorbed into the blood, is capable of seriously affecting health, or of destroying life." The editor of the work incorporates into this definition a parenthesis, to the effect that the poison must operate in the manner stated " by direct action." Taylor's Med. Jur. 71. See also 15 Am. & Eng. Enc. L. (1st ed.) 248. Giving to the word poison the meaning required by the definitions above quoted, no other conclusion can be reached than that one who introduces into a well of water, in such a quantity as to render the water when drunk seriously detrimental to health, and a serious impairment of the organic functions of the body, any substance whatever, is guilty of a violation of the statute under which the accused was convicted. The evidence in the present case warranted the verdict, and there was no abuse of discretion in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*