## 23347. WALDROP *v.* THE STATE.

DECIDED NOVEMBER 18, 1933.

*Price Edwards,* for plaintiff in error.
*S. W. Ragsdale, solicitor-general,* contra.

MACINTYRE, J. The indictment in this case contains two counts, the first charging that Hubert Waldrop, plaintiff in error in the instant case, and Ben Cook committed simple larceny, and the second that the same parties were guilty of receiving stolen goods, under section 168 of the Penal Code (1910). Both counts of the indictment have reference to the same transaction. Cook was convicted of simple larceny under the first count, and, later, Waldrop was

convicted of receiving stolen goods under the second count. Waldrop's exception is to the judgment overruling his motion for a new trial.

The second count of the indictment charges that Hubert Waldrop and Ben Cook committed a misdemeanor on December 20, 1931, in Haralson county, in that they "did buy, receive, and take a certain two-horse slat-winged McCormick-Deering turning plow and one iron doubletree, said plow and doubletree and singletree being the property and belonging to R. P. Edwards, and being of the value of $20.00, and said accused did buy, receive, and take the said property knowing at the time . . that the same had been stolen. . . " In his brief, counsel for the plaintiff in error states that he "was not employed in this case until it was too late to demur to the indictment or move to arrest the judgment."

Of course, no attack could be made upon the indictment in the motion for a new trial. See *Foss* v. *State*, 15 *Ga. App.* 478 (83 S. E. 880) ; *Moses* v. *State*, 123 *Ga.* 504 (51 S. E. 503) ; *Womble* v. *State*, 107 *Ga.* 666 (33 S. E. 630) ; *Boswell* v. *State*, 114 *Ga.* 40 (39 S. E. 897) ; *Sanders* v. *State*, 118 *Ga.* 329 (2) (45 S. E. 365) ; *Scandrett* v. *State*, 124 *Ga.* 141 (2) (52 S. E. 160). However, special ground 1 of the motion for a new trial is: "The court committed error . . in admitting in evidence the bill of indictment in this case showing a verdict against Ben Cook as follows: 'We, the jury, find the defendant Ben Cook guilty. January 29th, 1932. I. N. Daniel, Foreman,' over the objection of defendant's counsel, interposed at the time, on the ground that the same was irrelevant and immaterial, and because there is no allegation in the bill of indictment as to who the principal thief was, and because the second count was void because it did not set out the name of the principal thief. Said ruling was error because, there being no allegation as to who the principal thief was, movant was not put on notice that said fact would be sought to be proven, and because there was no allegation in said indictment as a foundation for the introduction of said testimony, and because said . . indictment did not charge the crime sought to be proven."

It is the law of this State that "an indictment under Penal Code, § 168, against one for receiving stolen goods, knowing them to be stolen, must allege that the principal thief has been indicted and convicted." *Ford* v. *State*, 162 *Ga.* 422 (134 S. E. 95). However,

it appears from the same decision that "the conviction of the principal is not an element in the crime defined in the Penal Code, § 168, but is a regulation which affects the time when or the manner in which a person indicted under said section can be tried;" and that "the gist of the offense created by said section is buying or receiving goods with the felonious knowledge that they were stolen." See cases cited in the *Ford* case. The indictment in the instant case does not charge that the principal thief had been indicted and convicted, and does not set out who the principal thief was. The exception to the introduction of the evidence in this case is that the indictment showing the prior conviction of Cook was inadmissible because the second count contained no allegation "as to who the principal thief was." As stated above, no proper objection was made to the indictment, and none can be made in the motion for a new trial. It is certainly true, however, that the indictment against the principal thief, with the verdict of guilty thereon, is admissible in evidence to prove that the principal thief had been indicted and convicted (*Stripland* v. *State,* 114 *Ga.* 843 (2), 40 S. E. 993); and this appears to have been the object of the State in introducing the indictment, rather than merely to show the name of the thief. We do not conceive that the indictment introduced in evidence was objectionable merely because it failed to set out "who the principal thief was." We hold that the objection was properly overruled, and that there is no merit in special ground 1.

The second and last special ground is: "Because the verdict . . is contrary to evidence and without evidence to support said verdict, there being no allegation in said indictment as to who the principal thief was or the name of any person from whom movant received said property knowing the same to have been stolen." The fact that there "was no allegation in the indictment as to who the principal thief was," would not make the verdict "contrary to the evidence." Furthermore, when fairly construed, this ground is merely an elaboration of the general grounds. We hold that there is no merit in this ground.

In their testimony the witnesses frequently refer to the property alleged to have been stolen as the "plow." For the sake of brevity we shall likewise often refer to said property as the "plow," or the "property." R. P. Edwards, sworn for the State, testified in substance that in the fall of 1931 he left the plow in his field and about

two miles from the defendant's home; that he missed the plow "sometime in the fall;" that "sometime in December, 1931," he and the sheriff found the plow at the corner of the defendant's barn, where "anybody going around the barn could see it;" that the defendant made no explanation as to how he happened to have the plow; and that the witness did not himself carry the plow away, but that the defendant brought it to him, saying "he bought it from a fellow."

Ben Cook, sworn for the State, testified in substance that he carried the plow out of the field and put it on the "Irishman's truck" at a time when the defendant was not present; that witness supposed the defendant was waiting for him at an old house nearby; that witness wanted to sell the plow to the defendant, but "he wasn't there" when witness "got there with it," and the Irishman told witness "he had come after it, him and the McWhorter boy;" that witness got off the truck "about a quarter" from where the plow was stolen and did not know what "the Irishman done with it;" and that witness had never said that he sold the property to Waldrop.

Julius McWhorter, sworn for the State, testified in substance that the plow was gotten "some time between sundown and dark;" that he, Waldrop, Ben Cook, and "Irishman Howard" were all on the truck which went after the plow; that witness and the Irishman remained on the truck and the defendant went with the negro Cook to get the plow from the field; that witness believed the plow belonged to Edwards; that witness did not know they were going after the plow, but thought "they were going after some liquor;" that witness did not hear Cook say he wanted to sell the plow to Waldrop, but that he did hear him say that "he was losing $12.50 on it;" that witness heard the defendant ask Cook "if there was anything against it," and heard Cook say that "it was his plowstock, and that there was nothing against it;" that witness did not know who owned the truck; and that "we all started from Hubert's house and went back to Hubert's house," and "it [the plow] was on the truck when we left."

G. B. Richards, sheriff of Haralson county, testified that he had information that led him "to go over there;" that the defendant did not tell from whom he bought the property, but that witness did not recall if he asked the defendant "where he got the plowstock from:" and that he didn't know where the Irishman was—hadn't seen him in a good long time.

The defendant stated to the jury that Ben Cook approached him two or three times and tried to sell him the plow, but that he did not want it; that he, the defendant, asked the negro where he lived, and "he said he lived on Price Edwards' farm and bought the plow-stock from Claude Moore and give $12.50 for it;" that he, defendant, then said: "Ben, if there is nothing against it, I will buy it from you—if there is nothing in the world against it;" that defendant "didn't pay for it at that time, but was to pay for it;" that Lee Trimble said, "This negro ain't farming, he ain't got no plow-stock;" that defendant again asked Cook about the plow, telling him, "there's no use lying about it, tell me where you got it," and that Cook then said: "I stole it from little Price Edwards;" that "after I found out it was a stolen plow, they wanted to take it and swap it for liquor," but that defendant said: "No siree, I am going to take it back to Price Edwards;" that Edwards was kin to defendant's wife; that defendant got the plow in good faith, but that he could not see Edwards, and that in "two or three days" Edwards came for the plow; that defendant told Edwards all about the plow "when he come;" and that "after I got caught in it, I done just exactly what I thought was right."

No question is raised as the proof of the venue, and the defendant says in his statement that Cook admitted to him that he, Cook, "stole it from little Price Edwards." Obviously, the controlling question under the general grounds is whether or not the defendant received the stolen property knowing it to have been stolen. In *Cobb* v. *State*, 76 *Ga.* 664, 666, this language occurs: "Circumstances may convict of the defendant's knowledge, as well as actual and direct proof. Indeed, it is rare that knowledge can be brought home to the receiver of cotton or other goods stolen by somebody who knows what the receiver knew touching the fact that they were stolen. The circumstances, the time, the secrecy, all the transactions before, at the time, and afterwards, may be brought to bear upon what was the knowledge of the receiver; and if from all these the jury can conclude that the receiver did have good reason, as a reasonable person, to believe or suspect that the goods were stolen, they may well conclude, if he did not inquire and investigate before he received them, that he had knowledge, such as the law will charge him with, of the character of the goods and of the person from whom he received, as one who had stolen them. It is true, knowl-

edge is the essence of the offense, and without it there can be no conviction; but knowledge may well be deduced from conduct and behavior, the character of the person from whom received, and the kind of goods, and the hour when received; and as in this case at bar, these may carry conviction of guilty knowledge." This rule has been followed in *Birdsong* v. *State*, 120 *Ga.* 850, 853 (48 S. E. 329), and in numerous other cases decided by the appellate courts of this State. Some of the features of the transaction under consideration which are deducible from the record, and which may have seemed significant to the jury, are these: the location of the property and the time when it was taken; the conduct of the defendant at the time the property was taken; the fact that the truck, with the defendant and others on it, left the defendant's home and returned there with the property on it; the insistence of the negro Cook in disposing of the property at what appeared to be a very low price; the evident suspicion that the negro did not have good title to the property, coupled with the fact that, notwithstanding this suspicion, the defendant bought the property on credit without taking the trouble to make inquiry of any other person than the negro himself; the fact that the defendant kept the property two or three days after he knew it had been stolen, without telling his wife's kinsman that he had it; the fact that the property was not found until the sheriff had information that led him to discover it at the defendant's place; the fact that (so far as the evidence shows) the defendant's only explanation of how he came into possession of the stolen property was that he "bought it from a fellow;" and the fact that neither the mysterious Irishman nor Lee Trimble, nor any other witness in behalf of the defendant, appeared at the trial of the case. We are satisfied that the evidence supports the verdict, and so hold.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*