GOSSITT *v.* THE STATE.

No. 11048. JUNE 12, 1936.

*M. C. Frost, William C. Frost,* and *George W. Westmoreland,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Clifford Pratt, solicitor-general, D. M. Parker, E. J. Clower,* and *E. C. Stark,* contra.

ATKINSON, Justice.   Bill Gossitt and Lannis Gossitt were jointly indicted for the murder of Charlie Bryant by beating him with an iron poker and shooting him with a shotgun.   On the separate trial of Bill Gossitt the jury returned a verdict finding the defendant guilty, and he was sentenced to be electrocuted.   His motion for a new trial was overruled, and he excepted.

1. It is not a ground for new trial that the indictment was void because, as alleged, the oath administered to the witnesses before the grand jury, under whose evidence the indictment was found, was not in the language of the statute. *White* v. *State,* 93 *Ga.* 47 (19 S. E. 49); *Womble* v. *State,* 107 *Ga.* 666 (33 S. E. 630); *Sanders* v. *State,* 118 *Ga.* 329 (2) (45 S. E. 365); *Bos-*

536

*well* v. *State,* 114 *Ga.* 40 (39 S. E. 897) ; *Moses* v. *State,* 123 *Ga.* 504 (51 S. E. 503) ; *Scandrett* v. *State,* 124 *Ga.* 141 (2) (52 S. E. 160) ; *Lumpkin* v. *State,* 152 *Ga.* 229 (7) (109 S. E. 664).

2. The evidence and certain statements of the defendant made not under oath to the jury, though conflicting, tended to show the following: The defendant and his son, Lannis Gossitt, occupied three rooms in a two-story dwelling which contained several other rooms. Charlie Bryant with his family occupied five rooms in the same building. Bryant agreed to let Ward occupy two of his rooms in the second story. The several men named were employees on the same farm on which the dwelling was located. The Gossitts were resentful concerning the occupation of the house by Bryant. Ward moved his household goods and family to the place about 4 o'clock in the afternoon, and was in the act of placing his furniture in the two rooms as mentioned. Lannis Gossitt appeared and demanded to know by what authority. Ward informed him that it was by authority of Bryant, who had said he would get permission from the common employer. Lannis displayed temper, and ordered him away. Lannis left the place, apparently going back to work on the farm in which he and his father were engaged. A short time later Bill Gossitt, the father, appeared at a store, purchased three loaded gun-shells, and left the store. After the close of working hours Bill Gossitt appeared at the home and protested to Ward against his moving to the place. Lannis soon afterwards also appeared and protested in an angry mood. Bryant came home and went to one of the rear rooms occupied by him for his supper. Ward and the Gossitts remained about the front porch. Ward was undecided whether, in view of the attitude of the Gossitts, he would remain or move away, but, on being informed by Bryant that the employer had given his assent, determined to remain. He sent for Bryant to come and help him move a piece of furniture up to his room. When Bryant had finished his supper he came around the house to help move the furniture. When he came, Lannis again commenced to protest in an angry manner, and picked up an iron fire-poker that had been left on the porch by Ward, and commenced to strike Bryant on the head and on his arms as he endeavored to ward off the blows, at the same time ordering Bryant to go away from the front of the house back to where he came from. Bryant, appearing to be

in a dazed condition, started back around the house, and Ward seized Lannis Gossitt in an effort to stop the assault. While the beating was in progress, Bill Gossitt walked briskly into the house and immediately returned with his gun, and from a distance of thirty feet exclaimed, "I will finish him," and fired, a load of number five shot entering Bryant's body almost directly from the front near the heart and lungs. Death ensued in a few minutes. After firing the shot Bill Gossitt walked away, carrying the gun. Lannis Gossitt called to him to leave the gun with him, in order that he might protect his things. The alarm was immediately given, and shortly the sheriff arrived and arrested both Gossitts. At the time of the arrest Lannis Gossitt had two of the gun-shells in his pocket which had been purchased by his father.

(a) A conspiracy may be shown by circumstantial as well as direct evidence. *Dixon* v. *State,* 116 *Ga.* 186 (9) (42 S. E. 357); *McLeroy* v. *State,* 125 *Ga.* 240 (54 S. E. 125); *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488).

(b) The circumstances narrated above were sufficient to authorize a finding by the jury of the existence of a conspiracy between the defendants, the natural consequence of which resulted in the homicide. *McLeroy* v. *State,* supra; *Short* v. *State,* 140 *Ga.* 780 (4) (80 S. E. 8); *Turner* v. *State,* 138 *Ga.* 808 (2) (76 S. E. 349). Therefore the court did not err, on the trial of Bill Gossitt, in admitting in evidence the fire-poker wielded by the hand of Lannis Gossitt, over the objection that it was not relevant or germane to any issue in the case.

3. The court charged the jury: "Now on the subject the court gives you this principle of law in charge: Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, unlawful either as a means or an end. This agreement may be established by direct proof, or by inference, as a deduction from conduct, which discloses a common design on the part of the persons charged, to act together for the accomplishment of the unlawful purpose. This question, that whether or not a conspiracy has been established, is solely for the jury to determine. The judge leaves it to you gentlemen in this case to determine from the evidence whether or not there was a conspiracy or an association to do the unlawful act alleged in this indictment on the part of the defendant and his son, and therefore that is a ques-

tion for the jury to determine from all the facts and circumstances in the case. If you find there was a conspiracy, and that the defendant participated in the common intent and purpose to do what was done, then what was done by any one of the conspirators, any one of the persons named in the indictment, in pursuance of that common intent and purpose would be just as binding upon him as if he did the act himself. If you find there was no conspiracy, or if there was a conspiracy and the defendant on trial did not participate in the common intent and purpose to do what was done, or that what was done was not that which is alleged in the indictment, then and in that event the defendant would not be bound by any act of the other party and would only be responsible for any act that he may have committed."

(*a*) The charge was not erroneous, as alleged, on the ground that there was no evidence of a conspiracy between the defendants.

(*b*) Neither was the charge erroneous on the alleged ground "that it impressed the jury that the killing was corrupt murder, with premeditated malice, rather than manslaughter."

4. The court charged: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." This charge was not erroneous on the ground, as contended, that the judge "did not instruct the jury, either in connection with this charge or elsewhere, that they might consider whether or not the words, threats, menaces, or contemptuous gestures were sufficient, under the circumstances surrounding the shooting, to arouse a reasonable fear on the part of the accused that his life was then and there in danger or that the life of his son was then and there in danger, and that he shot while under the influence of that fear." *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573) ; *Rawls* v. *State,* 160 *Ga.* 605 (2) (128 S. E. 747) ; *Hartley* v. *State,* 168 *Ga.* 296 (147 S. E. 504). If the ruling in *Phillips* v. *State,* 11 *Ga. App.* 262 (75 S. E. 14), is opposed to the ruling here made, it is not binding as a precedent.

5. The judge refused a request to charge: "Therefore, to reduce the killing to voluntary manslaughter, it is not necessary that any actual assault should be made by the deceased upon the accused. Our statute defining voluntary manslaughter declares that an actual assault or attempt to commit a serious personal in-

jury upon the slayer is not necessary to make the killing manslaughter, but that other equivalent circumstances to justify the excitement of passion may be sufficient to exclude the idea of a deliberate and wanton intention to take the life of the person killed." The judge charged: "If you should believe beyond a reasonable doubt that this defendant on trial did kill Bryant, named in the indictment, in the manner charged, but if you should further believe that at the time he killed him that Bryant was committing an assault upon the person of Bill Gossitt or his son less than a felony, or if you should believe that Bryant intended or endeavored, by violence or surprise, to commit an assault upon the defendant, Bill Gossitt, or his son, less than a felony, or if you should believe that the circumstances surrounding the killing were such as to excite the fears of a reasonable man that Bryant, the deceased, intended or endeavored, or was about to commit a serious personal injury upon the person of Bill Gossitt or his son, less than a felony, or if you should believe that there were other equivalent circumstances surrounding the killing to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied, and that the defendant Bill Gossitt shot and killed the person named in the indictment, Bryant, under such circumstances, then and in that event you would be authorized to find the defendant guilty of the offense of voluntary manslaughter." In view of the charge as given, there was no error in refusing the request.

6. The judge also refused a request to charge: "What circumstances will go to make up equivalent circumstances, and justify the excitement of passion, and exclude all idea of deliberation or malice, the law does not undertake to say; it furnishes a standard and leaves the jury in each case to make the comparison, and determine whether the special facts of the case before them comes up to that standard." The court instructed the jury: "If you should believe beyond a reasonable doubt that this defendant on trial did kill Bryant, named in the indictment, in the manner charged, but if you should further believe that at the time he killed him that Bryant was committing an assault upon the person of Bill Gossitt or his son, less than a felony, or if you should believe that the circumstances surrounding the killing were such as to excite the fears of a reasonable man that Bryant, the

deceased, intended or endeavored or was about to commit a serious personal injury upon the person of Bill Gossitt or his son, less than a felony, or if you should believe that there were other equivalent circumstances surrounding the killing to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied, and that the defendant Bill Gossitt shot and killed the person named in the indictment, Bryant, under such circumstances, then and in that event you would be authorized to find the defendant guilty of the offense of voluntary manslaughter." In view of the charge as given the refusal of the request was not cause for a new trial.

7. The judge also refused a request to charge: "Other equivalent circumstances must be such as would produce the same state of mind on the part of the defendant as would an assault upon him or an attempt to commit a serious personal injury in order to justify the excitement of passion and to exclude all idea of deliberation or malice." This request was not accurately adjusted to the evidence, and the refusal was not cause for reversal.

8. The evidence was sufficient to support the verdict, and there was no error in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*