### 26171. LINDSEY v. THE STATE.

ARGUED NOVEMBER 9, 1970—DECIDED DECEMBER 3, 1970.

*Albert B. Wallace,* for appellant.

*Richard Bell, District Attorney, Eugene Highsmith, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, William R. Childers, Jr., Assistant Attorneys General,* for appellee.

MOBLEY, Presiding Justice. Walter Wilson Lindsey was jointly indicted with Carlton Lee Wells for the murder of Edward Chesnut. Wells pleaded guilty. Lindsey was tried and convicted, and sentenced to life imprisonment. He appeals from the judgment of conviction and sentence, and enumerates as error the denial of his motion for new trial, as amended, and other alleged errors.

The murder with which appellant was charged occurred while a robbery was being committed. Wells admits that he is the person who committed the robbery, during which the deceased was killed. It was the contention of the State that appellant conspired with Wells to commit the robbery, and was guilty of the murder resulting from that crime.

■ The answers to several of the questions raised by the enumeration of errors depend on a determination of the sufficiency of the evidence to show that there was a conspiracy between Wells and appellant to commit the robbery, and we will first consider this question.

The testimony of an accomplice, uncorroborated by other competent evidence, is not sufficient to convict a person charged with a felony. *Code* § 38-121. Appellant strongly urges that there was no evidence to corroborate the testimony of Wells that appellant suggested the robbery, during the course of which the deceased was

killed, and conspired with him in effecting the robbery.

The robbery occurred at the grocery store and filling station of two brothers, Charles and Edward Chesnut. The testimony of the surviving brother shows the following: The time of the robbery was "dusk dark." Wells walked up to their station, and at gunpoint forced them to go into the store, and one of the victims to give him his pocketbook, which contained about $400 in bills and some checks. Wells forced the brothers to get in their truck and drive the three of them to a place designated by Wells. There Wells made the brothers get out of the truck. The gun was discharged, and Edward Chesnut received a bullet wound, from which he later died. Charles Chesnut then grabbed Wells and pulled him to the ground and beat him with the gun. Wells asked Chesnut if he was trying to kill him, and when Chesnut said that he was, Wells said: "Don't kill me. I'll tell you who put me up to it; who planned it all." Chesnut asked who it was and Wells said: "Wilson Lindsey." Chesnut asked where Lindsey was, and Wells replied: "He's down there waiting on me in the truck." Chesnut hit Wells twice more. Chesnut's brother said that he was shot, and Chesnut went to his brother's assistance, allowing Wells to escape.

Carlton Lee Wells testified as to appellant's participation in the robbery as follows: At about 10 o'clock on the morning of January 8, 1969 (the date of the homicide) he came to appellant's boarding house. He had come to the county to look at an abandoned generator plant they were talking of buying. He, appellant, and Jack Miller went to a whiskey store and bought some whiskey. They were riding in Wells' truck. At one time during the day they stopped at Jones Trading Post. Later in the day Wells had a conversation with appellant about the store operated by the Chesnut brothers. Appellant mentioned that "there was a good bit of money there," and they decided that "somebody ought to get it." Appellant said that Wells would have to take the gun and go and take the money because appellant was known by the people and Wells was not. Wells took the pistol belonging to appellant, which was on the seat of the truck, and got out of the truck and walked about 500 yards to the store. They were to wait for him at Jones' store. The robbery and shooting occurred about 6 p.m., and Wells

ran through the woods until about midnight. When he came to a house, he told the people there that he had been in an automobile accident, and hired them to take him to appellant's boarding house, paying them $120. When Wells got to the boarding house the following occurred: "He asked me what happened and I told him that I did not know; that there was a fight and at that time I didn't know that anybody had been shot. And it was after midnight then, and I asked him if he would go to get some whiskey for me. I was in the back room trying to wash the blood off me. I was a bloody mess. I asked him to go to the bootlegger and get some whiskey, and he said, 'Where's the money?' I said, 'In my shirt pocket.' He took it out of my shirt pocket, my hand was so bloody, I couldn't take it out. . . This was money taken from the Chesnuts. . . I asked him what happened to him and he said that white pick-up truck come flying out from there with those two brothers in it, he knew something had gone on and so he left." On cross examination Wells admitted that he had been convicted of numerous felonies. The indictments and convictions were introduced in evidence by appellant. Wells stated that he did not remember making any statement to Chesnut while Chesnut was beating him with the pistol.

The circumstances relied on by the State to corroborate Wells' testimony are the following: Watson Jones, who operated Jones Trading Post, saw appellant and Wells together, a short distance from the scene of the crime, at about 4:30 or 5 p.m. on the date of the homicide. Appellant admitted that he and Jack Miller waited for Wells in Wells' truck a short distance from the place where the robbery was committed, although appellant stated that Wells said he was going to see about a generator. A few hours after the robbery and murder, a police officer pursuing appellant saw him stoop over in the automobile in which he was riding, and when they searched this automobile they found $267 in bills under the seat beneath the place appellant was sitting, and some of these bills had a red, dried material on them which seemed to be blood. The amount of $267, plus the amount paid by Wells to the person driving him after the robbery ($120 according to Wells, and $20 according to the witness Hurst) approximated the amount of money taken in the robbery.

"The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence." *Hargrove v. State,* 125 Ga. 270, 275 (54 SE 164); *Whaley v. State,* 177 Ga. 757 (3) (171 SE 290); *Smith v. State,* 189 Ga. 169, 172 (5 SE2d 762).

We can not say as a matter of law that there was no evidence in the present case connecting appellant with the crime, and we must affirm the overruling of the general grounds of the motion for new trial.

■ Appellant on a former trial was acquitted of the charge of robbery in the same transaction in which the homicide occurred. Appellant assigns error on the admission of evidence concerning the robbery, over the objection that appellant had been acquitted of this charge. Appellant also contends that the court erred in charging the jury on a conspiracy to rob and murder, because of his previous acquittal of the charge of robbery.

No plea of former jeopardy was filed, and such a plea would not have been good, since the crimes of robbery and murder are separate crimes even though both are committed in the same transaction. *Harris v. State,* 193 Ga. 109, 119 (17 SE2d 573, 147 ALR 980). However, even where a plea of former jeopardy is not available, a criminal judgment is res judicata of every fact in issue which is actually or necessarily adjudicated by that judgment. *Harris v. State,* supra. This is sometimes referred to as the doctrine of collateral estoppel. See 9 ALR3d 210; Hoag v. New Jersey, 356 U. S. 464 (78 SC 829, 2 LE2d 913).

The evidence in the present case showed that when appellant was on trial for the offense of robbery, objection was made by his counsel to the first witness on the ground that a list of the witnesses had not been furnished appellant. The prosecuting attorney stated to the court that this was a material witness, and if he could not use him, the court should direct a verdict of acquittal, which was done.

Thus it appears that no question of fact as to the guilt of appellant was determined in the trial for robbery, and his acquittal in

that case does not preclude the State from introducing evidence of the robbery to prove appellant's guilt of murder in the same transaction.

It was not error to admit evidence of the robbery, or to charge on the contention of the State that there was a conspiracy between appellant and Wells to commit an armed robbery, and that pursuant to this conspiracy the deceased met his death.

The charge on a conspiracy to rob, and killing in consequence thereof, which equated such killing with murder, was correct as an abstract principle of law. *Gore v. State,* 162 Ga. 267 (1) (134 SE 36). We have examined the whole charge on conspiracy and find that the issue was fairly presented, and no error was committed in the instructions on conspiracy complained of in the enumeration of errors.

■ Error is assigned on the admission in evidence of the statement made by Wells to Chesnut during the course of the robbery, at a time when Chesnut had obtained the pistol and was beating Wells with it. The ground of objection was that it was hearsay, and was not voluntary.

Appellant also contends that the court erred in failing to charge the jury that they should not consider any statement made by Wells about appellant's participation in the criminal enterprise unless the statement was freely and voluntarily made, and that the statement would have no probative value if made as a result of any coercion, threats, intimidation, or violence committed upon Wells.

*Code* § 38-411, in regard to the inadmissibility of a confession unless voluntarily made, has no relevancy to the statement admitted in evidence here. It was not a confession or admission by Wells, but was a statement implicating another made while he was in the process of committing a robbery. The court did not err in failing to charge that the jury should refuse to consider it if they found that it was not voluntary. No request was made for a charge cautioning the jury to consider the circumstances under which the statement was made in determining its probative value.

The evidence is an exception to the hearsay rule. "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be

admissible against all." *Code* § 38-306. We have previously held that the evidence was sufficient to show a conspiracy between appellant and Wells. The criminal project had not ended at the time the statement was made by Wells, and it was admissible in evidence. *Barrow v. State,* 121 Ga. 187 (2) (48 SE 950).

■ It is contended that the court erred in admitting testimony of the witness Ponder that he found money under the seat of the automobile in which appellant was riding at the time he was arrested. Objection was made to the evidence on the ground that no warrant for appellant's arrest was shown, that the officers had no right to search the car, and that evidence obtained in such search was illegal.

This witness was a police officer with the City of Forest Park, and he had received a radio call from the Clayton County Police to look for a car of the same description as the one in which appellant was riding. The witness held appellant in custody until Chief Howard Smith arrived, after which the witness, on the instruction of Chief Smith, searched the car and found the money.

Appellant has not contended that his arrest was illegal, and he has made no written motion to suppress evidence obtained at the time of his arrest. The facts of this case bring it within the ruling made in *Hunsinger v. State,* 225 Ga. 426, 427 (169 SE2d 286), where it was held: "No contention is made that the arrest was not a lawful one, and the search of the motor vehicle in which the defendant was a passenger for things connected with the crime for which he was arrested was not unlawful."

■ Error is assigned on the admission in evidence of the pistol used in the robbery by Wells, and other physical exhibits, on the ground that they were admissible only on the question of the guilt or innocence of Wells, and could not be admitted as evidence on the trial of appellant because there was no corroboration of Wells' testimony connecting appellant with the crime.

The question of the sufficiency of the evidence to connect appellant with the crime has already been decided adversely to his contentions. Where a conspiracy is shown, exhibits relevant to the commission of the crime are admissible against a co-conspirator. *Gossitt v. State,* 182 Ga. 535, 537 (186 SE 417).

*Judgment affirmed. All the Justices concur.*